Andrew W. Stern (AS 7094)
Saima S. Ahmed (SA 9342)
SIDLEY AUSTIN BROWN & WOOD LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants Deutsche Bank AG and Deutsche Asset Management

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| DEBUSSY LLC, on behalf of itself and all others similarly situated, | 05 Civ. 5550 (SHS) (JCF) |
|  | (ECF CASE) |
| Plaintiff, |  |
| against | **JOINT NOTICE OF REMOVAL** |
| DEUTSCHE BANK AG and DEUTSCHE ASSET MANAGEMENT, |  |
| Defendants. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

To the United States District Court for the Southern District of New York:

Defendants Deutsche Bank AG ("Deutsche Bank") and Deutsche Asset Management ("DeAM") respectfully provide notice of the removal to this Court of a civil action filed in the Supreme Court of the State of New York, County of New York, captioned <u>Debussy LLC v. Deutsche Bank AG and Deutsche Asset Management</u>, Index No. 601328/05.

## **GROUNDS FOR REMOVAL**

1.     Defendants remove this action pursuant to 28 U.S.C. §1441(a).  This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1332 (as amended), 1446

and 1453. Specifically, this Court has jurisdiction over this putative class action under the recent

amendments of the Class Action Fairness Act of 2005 ("CAFA") to 28 U.S.C. § 1332 *et seq.*

because (1) the citizenship of at least one putative class member is different from that of at least

one defendant; (2) the putative class action consists of at least 100 putative class members; and

(3) the amount in controversy, after aggregating the claims of the proposed class members,

exceeds $5 million, exclusive of interest and costs.[1]  See Pub. L. 109-2, 119 Stat. 4 (codified as

amended at 28 U.S.C. § 1332 *et seq.*).

> a.      Diversity of Citizenship:  CAFA requires only minimal diversity,

i.e., that "any member of a class of plaintiffs is a citizen of a State different from *any* defendant"

or "any member of a class of plaintiffs is a citizen of a State and any defendant is a . . . citizen or

subject of a foreign state."  28 U.S.C. § 1332(d)(2)(A) & (C) (as amended) (emphasis added).

Here, this requirement is met because there is diversity between the named plaintiff, Debussy

LLC ("Debussy"), and defendant Deutsche Bank.

> i.      Citizenship of plaintiff:  On information and belief,

Debussy was, at the time of the filing of the Complaint, and still is, a limited liability corporation

organized under the laws of the State of New York with its principal place of business in New

York and accordingly, a citizen of the State of New York.  See  § 1332(c) ("a corporation shall

be deemed to be a citizen of any State by which it has been incorporated and of the State where it

has its principal place of business"); Class Action Complaint ("Compl."), ¶ 10 ("Debussy is

---

[1] Removal to this Court is based upon the allegations of the Complaint.  Defendants do not concede, and expressly preserve all rights and objections with respect to, the allegations that this action properly has been brought, or may be prosecuted as, a class action.

incorporated in the State of New York and located at 150 East 52nd Street, 8th Floor, New York, New York 10022-6017").[2]

        ii.  Citizenship of defendants:  Defendant Deutsche Bank was, at the time of the commencement of this action, and still is, a German stock corporation organized under the laws of the Federal Republic of Germany, with its principal place of business in Frankfurt, Germany.  According to the Complaint, defendant DeAM is "the marketing name in the United States for the asset management activities of Deutsche Bank AG and other Deutsche Bank entities." Compl., ¶ 12.  Although the Complaint does not allege the organizational status of DeAM or identify the proper Deutsche Bank entity responsible for the asset management activities that are the subject of the Complaint, upon information and belief, Deutsche Investment Management Americas Inc. ("DIMA"), formerly known as Scudder Kemper Investments, Inc., was a party to the agreements at issue in the Complaint.  To the extent that the citizenship of DIMA may be relevant for purposes of removal to this Court, DIMA was, at the time of the commencement of this action, and still is, a corporation organized under the laws of Delaware with its principal place of business in New York and thus is a citizen of Delaware and New York.  See § 1332(c)(1).  Accordingly, because there is diversity between Deutsche Bank, a citizen of Germany, and Debussy, a citizen of the state of New York, the minimal diversity requirements of CAFA are satisfied.  See § 1332(d)(2)(C).

      Moreover, this action is removable under CAFA notwithstanding the fact that DIMA is a citizen of New York, the state in which the action was brought.  See § 1453(b) ("a class action may be removed . . . without regard to whether any defendant is a citizen of the

---

[2] Moreover, CAFA's limitations on the removal of statewide class actions do not apply.  Upon information and belief, at the time of the filing of the Complaint, less than two-thirds of the members of the proposed plaintiff class in the aggregate were citizens of New York, the state in which the action was originally filed.  See §§ 1332(d)(4).

State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants").

        b.    <u>Number of Members in The Proposed Plaintiff Class</u>: CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" be at least 100. § 1332(d)(5)(B) (as amended). Plaintiff brings this action on behalf of "all persons or entities with a direct or indirect interest in the Securities issued by the Trust as of December 13, 2003, the final redemption payment date" and alleges that "the holders of the notes issued by the Trust were two mutual funds that currently have over 100 million shares outstanding." Compl., ¶¶ 4, 6. Furthermore, according to the Complaint, "[w]hile the exact number of investors in those funds is not ascertainable without discovery, it is likely that hundreds, if not thousands, of investors had a direct or indirect interest in the Securities." Compl., ¶ 6. Accordingly, based upon the allegations in the Complaint, the requirement that the number of members in the putative class be 100 or more is satisfied. <u>See</u> § 1332(d)(5)(B) (as amended).

        c.    <u>Amount in Controversy</u>: CAFA requires that the "aggregate[]" "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." § 1332(d)(2) & (6) (as amended). Plaintiff seeks extensive relief on behalf of itself and the proposed class members for damages that it alleges resulted from "Deutsche Bank dump[ing] the Reference Loan Portfolio on a weak loan market and thereby severely diminish[ing] the investors' return" resulting in "the Certificateholders receiv[ing] none of the $3 million originally invested, and the Noteholders receiv[ing] only $20 million of the $41 million invested." Compl., ¶ 47. Given that the class purports to include both Certificateholders and Noteholders, the aggregated amount sought by plaintiffs, based on the allegations in the Complaint, is at least $24 million, exclusive of interest and costs. Accordingly, the amount in

4

controversy for federal diversity jurisdiction clearly is met.  See §§ 1332(d)(2) & (6) (as

amended).

## PROCESS, PLEADINGS OR ORDERS SERVED

2.      The Summons with Notice and Class Action Complaint, along with

Statement of Service by Mail and Acknowledgement of Receipt by Mail of Summons and

Complaint, annexed hereto as Exhibit A, were received by defendants at 280 Park Avenue New

York, New York 10017 on or about May 12, 2005.[3]

3.      No other process, pleading, or order has been served on defendants in this

action.

4.      Defendants have not answered or moved with respect to the Complaint,

and their time to do so has not yet expired.

## NOTICE OF REMOVAL TIMELY FILED

5.      Removal of this case to this Court is timely.  Pursuant to 28 U.S.C. §

1446(b), a Notice of Removal must be filed within 30 days of service of a copy of the initial

pleading setting forth the claims for relief upon which the action is based.  See § 1446(b);

Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 356 (1999) (holding that thirty

day time period under removal statute begins to run from the date of formal service).  Deutsche

Bank and DeAM received the Summons with Notice and Complaint, along with a Statement of

Service By Mail and Acknowledgement of Receipt By Mail of Summons and Complaint

---

[3] In addition, defendants were served, by personal delivery, with a copy of the Summons with Notice and Complaint at 60 Wall Street New York, New York 10005 on or about June 9, 2005. Defendants do not concede, and expressly

*(Footnote continued)*

("Acknowledgement of Receipt") on or about May 12, 2005.  Pursuant to Rule 312-a of the

New York Civil Practice Law and Rules, a defendant must complete the Acknowledgement of

Receipt within thirty days from the date of receipt.  See N.Y. C.P.L.R. 312-a(b)(1).  "Service is

complete on the date the signed acknowledgement of receipt is mailed or delivered to the

sender."   See N.Y. C.P.L.R. § 312-a(b)(1).  Because service by mail, insofar as it is deemed to

be proper here, will be completed no sooner than June 13, 2005 (because June 11th is a Saturday

and June 12th is a Sunday) -- the date on which defendants' signed acknowledgment is due to be

returned to plaintiff's counsel-- defendants' notice of removal must be filed by July 13, 2005 --

thirty days from the date of service.  See § 1446(b).  Accordingly, this Joint Notice of Removal

is timely filed.

6.     A copy of this Joint Notice of Removal is being filed with the Clerk of the

Supreme Court of the State of New York in and for the County of New York and is being served

on counsel of record.  See 28 U.S.C. § 1446(a) & (d).

Dated: New York, New York
       June 13, 2005                       Respectfully submitted,

                                           SIDLEY AUSTIN BROWN & WOOD LLP

                                           By:  _____
                                                Andrew W. Stern (AS 7094)
                                                Saima S. Ahmed (SA 9342)
                                                787 Seventh Avenue
                                                New York, NY  10019
                                                (212) 839-5300

                                           Attorneys for Defendants Deutsche Bank AG and
                                           Deutsche Asset Management

---

reserve, all rights to object to, and defenses to, the Complaint, including but not limited to objecting to process
served upon DeAM, which is alleged in the Complaint to be a "marketing name." Compl. ¶ 12.

# EXHIBIT A

**Supreme Court of the State of New York**

**County of**   NEW YORK

NEW YORK, N. Y. 10013

*Plaintiff(s) designates*

NEW YORK
*County as the place of trial*

DEBUSSY, LLC, on behalf of itself and all others
similarly situated,

*The basis of the venue is*
Plaintiff's residence

*Plaintiff(s)*

*against*

**Summons with Notice**

DEUTSCHE BANK AG and DEUTSCHE ASSET MANAGEMENT,

*Plaintiff(s) reside(s) at*
c/o Abbey Gardy, LLP
212 East 39th Street

*Defendant(s)*

*County of*   New York

*To the above named Defendant(s)*

**You are hereby summoned** *to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.*

*Dated,*   April 14, 2005

*Defendant's Address:*
60 Wall Street
New York, New York 10005

*Notice: The nature of this action is*

ABBEY GARDY, LLP
*Attorney(s) for Plaintiff(s)*
*Office and Post Office Address*

212 East 39th Street
New York, New York 10016
(212) 889-3700

*The relief sought is*

*Upon your failure to appear, judgment will be taken against you by default for the sum of $
with interest from                    19           and the costs of this action.*

| | |
|---|---|
| DEBUSSY LLC, on behalf of itself and all others similarly situated,<br><br>              Plaintiff,<br><br>    -against-<br><br>DEUTSCHE BANK AG and DEUTSCHE ASSET MANAGEMENT,<br><br>             Defendants. | Index No. 05/601328<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Debussy LLC ("Debussy"), by its attorneys, alleges upon information and belief, except as to paragraph 10 which plaintiff alleges upon knowledge, as follows:

## NATURE OF THE ACTION

1.     Debussy was a holder of securities issued by Riverside Loan Trust II ("Riverside II" or the "Trust"), a business trust established under the laws of the State of Delaware for the purpose of investing derivatively in senior secured bank loans. The Trust was governed by a trust agreement and indenture. The loan portfolio in which the Trust invested was managed at all relevant times by a portfolio manger pursuant to a portfolio management agreement. This action is brought to recover damages suffered by all direct and indirect investors in the Trust resulting from the portfolio manager's breach of fiduciary duty and breach of contract in connection with its premature dismantling of the Trust to serve its own best interests and to the detriment of the holders of securities of the Trust.

2.     In March 2002, Deutsche Asset Management ("DeAM") became portfolio manager of the Trust after acquiring the then current portfolio manager. Rather than manage the loan portfolio in a reasonable manner and in the interest of investors, DeAM deceived the Trust's

investors into consenting to its appointment as portfolio manager, concealed its intentions to collapse the Trust, ignored its duties to and conflicts with the Trust's investors and prematurely dismantled the Trust, more than six years before the term of its underlying securities, causing significant damage to the holders of the Trust's securities.

3. As a result of DeAM's actions, the investors in the Trust, including two publicly-held mutual funds, suffered significant damages in the form not only of a minimal return of their initially invested capital, but also in the deprivation of their right to their interest in the Trust for the remaining six years of its original term. As set forth herein, DeAM took these actions in order to eliminate its own conflicts as a competitor for the bank debt underlying the Trust and to create a corporate opportunity for itself.

## CLASS ACTION ALLEGATIONS

4. Plaintiff brings this action on its own behalf and as a class action, pursuant to CPLR § 901 (the "Class"), on behalf of all persons or entities with a direct or indirect interest in the Securities issued by the Trust as of December 13, 2003, the final redemption payment date.

5. This action is properly maintainable as a class action.

6. The Class is so numerous that joinder of all members is impracticable. As of the final payment date, the holders of the notes issued by the Trust were two mutual funds that currently have over 100 million shares outstanding. While the exact number of investors in those funds is not ascertainable without discovery, it is likely that hundreds, if not thousands, of investors had a direct or indirect interest in the Securities.

7. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following: (a) whether defendants breached their fiduciary and other

2

common law duties owed by them to plaintiff and the members of the Class; (b) whether defendants breached the terms of the Portfolio Management Agreement that governed their relationship with the Trust (b) whether defendants pursued a scheme and course of business designed to unjustly enrich DeAM and its parent company at the expense of and to the detriment of the holders of securities issued by the Trust; and (c) whether the Class is entitled to damages as a result of the wrongful conduct committed by defendants.

8.     The claims and defenses of Debussy are typical of the claims and defenses of the Class and Debussy will fairly and adequately protect the interests of the Class.

9.     A class action is superior to other available methods for the fair and efficient resolution of the controversy.

## SUBSTANTIVE ALLEGATIONS

10.     Plaintiff Debussy is a limited liability corporation created for the purpose of investing in the leveraged bank loan trust discussed herein.  Debussy is incorporated in the State of New York and located at 150 East 52nd Street, 8th Floor, New York, New York 10022-6017.

11.     Chase Manhattan Bank Delaware ("Chase Delaware") is a Delaware banking corporation with its principal offices located at 1201 Market Street, 9th Floor, Wilmington Delaware 19801.

12.     DeAM is the marketing name in the United States for the asset management activities of Deutsche Bank AG and other Deutsche Bank entities (collectively, "Deutsche Bank").  DeAM is one of the world's largest investment management companies with over $730 billion in assets under management.  Deutsche Bank is a banking association organized under the laws of the Republic of Germany with a principal place of business in the State of New York.

3

The Trust was a business trust established in 1998 under the laws of the State of Delaware. The Trust was established (1) to issue certain floating rate Certificates and Notes (collectively, the "Securities"); (2) to invest and reinvest the proceeds from sale of the Securities in certain eligible investments; (3) to enter into agreements as necessary in connection with the Trust Agreement and the Indenture, such as a Portfolio Management Agreement and the Swap Agreement and (4) to engage in other activities "necessary, suitable or convenient" to accomplish any of the above.

14.     The Securities were issued on or about July 27, 1998. The Certificates were issued pursuant to a Trust Agreement dated as of July 16, 1998 between Debussy and Chase Delaware, as Trustee. The Notes were issued pursuant to an Indenture also dated as of July 16, 1998 between the Trust, as Issuer, and The Chase Manhattan Bank ("Chase Bank"), as Indenture Trustee. The Trust documents provided for a 10-year term, beginning on July 16, 1998 and expiring on July 16, 2008.

15.     Debussy LLC purchased 100% of the Trust Certificates. Two Scudder Mutual Funds (Scudder Diversified Income Fund and Scudder Multi-Market Income Fund) purchased 100% of the Notes issued by the Trust.

16.     Investors in the Securities recognized a return on their investment by agreeing to exchange payments linked to the market value of and payments received under certain senior secured bank loans ("Reference Loans") designated for inclusion in a portfolio of loans (the "Reference Loan Portfolio") pursuant to a Swap Agreement between the Trust and Chase Bank ("Chase Bank") as Swap Counterparty. The Trust had no direct interest in any Reference Loan, but rather had an economic interest effected solely through calculations set forth in the Swap Agreement. By purchasing the Securities, investors essentially were purchasing a derivative

4

interest in the Reference Loans. The intended economic effect of the of the Swap Agreement was to allow holders of Securities of the Trust to participate indirectly on a leveraged basis in the total return from loans in the Reference Loan Portfolio, including interest, fees and realized market value changes.

17.     The Trust provided quarterly distributions to the Certificateholders at a negotiated per annum rate and interest to the Noteholders at a negotiated per annum rate, each less fees and expenses necessary to the transaction.

18.     On July 16, 1998, Scudder Kemper Investments, Inc. ("Scudder") became the Portfolio Manager of the Trust, thereby assuming complete responsibility for the management of the Riverside II Reference Loan Portfolio upon which all of the returns to the Trust depended. The role of Scudder as Portfolio Manager was governed by a Portfolio Management Agreement dated as of July 16, 1998 between Scudder and the Trust. The Portfolio Manager was charged with directing various aspects of the management of the Reference Loan Portfolio, included the designation of loans to be added to the Reference Loan Portfolio. By entering into the Portfolio Management Agreement, the Portfolio Manager expressly agreed to be held to a prudent man standard in performing its services to the Trust. Plaintiff specifically relied on Scudder's willingness to act as Portfolio Manager in deciding to purchase the Certificates.

19.     On April 8, 2002, Deutsche Bank announced the closing of its acquisition of Scudder from Zurich Financial Services, its then current owner. Scudder then became the United States mutual fund operation of DeAM which in turn remained a part of Deutsche Bank. DeAM assumed Scudder's management responsibilities with respect to the Riverside II Reference Loan Portfolio.

5

Investments had written to Debussy as the Certificateholder seeking its consent to allow DeAM to continue to provide investment management services to the Trust after the acquisition. In seeking Debussy's consent, Scudder and DeAM made no disclosure of the potential conflict between Deutsche Bank as a competitor in the market for the secured bank debt underlying the Trust and Deutsche Bank as the Portfolio Manager of the Trust.

21.     Further, at no point during this period did Deutsche Bank indicate that it no longer wished its now-owned Scudder funds to continue to pursue this particular investment strategy or that it was considering redeeming the Notes. Deutsche Bank did not communicate even the possibility that that it would cause the Trust to be collapsed when it took over as Portfolio Manager.

22.     Shortly after completion of the merger, Deutsche Bank and/or DeAM discharged all of the Scudder employees responsible for management of the Loan Portfolio and directly assumed all of Scudder's obligations and duties to the Trust's participants.

23.     On July 22, 2002, less than 4 months after seeking Debussy's consent to its management of the Trust, Deutsche Bank or DeAM caused the two Noteholders, mutual funds managed by Scudder (which was now owned by Deutsche Bank), to execute notices of redemption for the full amount of Notes held on the next succeeding payment date, October 30, 2002, pursuant to the terms of the Indenture and the Trust Agreement. The redemption operated as a forced dissolution of the Trust and a liquidation of the Reference Loan Portfolio collateral. Debussy was powerless to stop the dissolution.

24.     At the time it was notified of the redemption, Debussy had no knowledge or estimate of the ultimate distribution to which it would be entitled because the underlying assets

6

would not be valued until the end of 2002. Debussy was asked to consent to various amendments to the Trust documents in order to effectuate the liquidation. The amendments were procedural in nature and included modifications of the final payment date and the asset valuation date. At the time its consent to the amendments was sought and received, Debussy could not have known the amount of the return on its investment given that the Reference Loans would be sold into a distressed market, nor was there made available any estimated redemption calculation.

25.     As calculated on the final payment date of December 13, 2002, the Kemper Diversified Income Fund received only $14,895,505.56 of its initial investment of $30 million, after payment of Trustee fees, other fees and accumulated swap payments to Chase Bank. The Kemper Multi Market Income Fund received $4,985,168,52 of its initial investment of $10 million, after payment of Trustee and other fees and accumulated swap payments to Chase Bank.

26.     While the Noteholders received a small portion of their initial investments upon dissolution, Debussy received *nothing*. The cash available for redemption as of December 13, 2002 was insufficient to even cover the outstanding fees and swap payments attributable to the Certificateholders. Deutsche Bank's timing of the dissolution compounded this loss of capital. The Reference Loan Portfolio was sold at a market low exacerbating the losses to the holders of the Securities. Further, the holders of the Securities were deprived of over six years of swap payments that they would have received had Deutsche Bank not caused the Noteholders to issue premature notices of redemption.

27.     On April 30, 2004, after a series of discussions with representatives of Chase, plaintiff Debussy LLC sent a letter to Chase Delaware as Trustee demanding that Chase

7

Delaware immediately commence an action on behalf of the Riverside Loan Trust II to recover the damages resulting from Deutsche Bank's mismanagement.

28.     On November 3, 2004, Chase Delaware (through its successor) sent a letter to DeAM requesting that Deutsche Bank, as portfolio manager, forward any response to the April 30, 2004 letter.

29.     On November 17, 2004, DeAM responded to Chase Delaware's letter acknowledging that it had decided to abandon the Trust because "this was an investment strategy that it no longer wished to pursue. . . ." As a result of DeAM's letter, Chase Delaware, as Trustee, informed Debussy that it would take no further action unless the Noteholders and Certificateholders furnished directions and satisfactory security or indemnity.  Obviously, seeking security from the Noteholders, two funds controlled by Deutsche Bank, will be futile. Chase Delaware also referred Debussy to Section 7.16 of the Trust Agreement which provides that the Trustee shall not take or refrain from taking any action at the direction of the Certificateholders if such action or inaction would have an adverse effect in any respects upon the interests of the Portfolio Manager without the consent of the Portfolio Manager.  In other words, Chase Delaware declined to initiate a suit against Deutsche Bank because Deutsche Bank would not agree to sue itself.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty)

30.     Plaintiff repeats and realleges each allegation set forth in paragraph one through twenty-nine as though set forth fully herein.

31.     By entering into the Portfolio Management Agreement with the Trust, the Portfolio Manager of the Trust assumed complete responsibility for the management of the

Reference Loan Portfolio upon which all of the returns to the Trust depended. As the designee of the Trustee to direct various aspects of the management of the Reference Loan Portfolio, included the designation of loans to be added to the Reference Loan Portfolio, the Portfolio Manager assumed the role of a fiduciary with respect to the holder of Securities issued by the Trust. As a fiduciary, the Portfolio Manager is held to a prudent man standard in performing its services to the Trust.

32.     Pursuant to Section 7.2 of the Trust Agreement "the Trustee shall exercise its trusts, powers and duties with regard to the management of the portfolio of Reference Loans solely at the express direction of the Portfolio Manager . . . ." Through the Portfolio Management Agreement, the Trust expressly delegated its duties with respect to the management of the Reference Loan Portfolio to the Portfolio Manager.

33.     Deutsche Bank's conduct in the Riverside transaction violated its fundamental duties as Portfolio Manager. Rather than manage the Loan Portfolio in accordance with its obligations, Deutsche Bank decided to disregard the best interests of the Certificateholders and the Noteholders and instead collapse the Riverside II transaction for the sole purpose of satisfying its own corporate objectives. Deutsche Bank made a corporate decision to fire experienced managers, to abandon the Trust despite the impact on investors, and to liquidate the Reference Loan Portfolio in a manner that failed to maximize value for the Trust. Specifically, Deutsche Bank discharged all of the experienced Scudder employees responsible for managing the Reference Loan Portfolio before completion of the wind down and final Swap settlement, and dissolved the Trust and liquidated the Reference Loan Portfolio for no legitimate reason into a very weak market, in complete disregard for the effect on the Noteholders and Certificateholders.

9

Deutsche Bank elected to ignore its management responsibilities and fiduciary obligations and to abandon the Trust despite the impact on the Trust's investors, all in an effort to satisfy its own corporate agenda. Defendants' breach of fiduciary obligations arose from willful misfeasance, gross negligence and a reckless disregard of DeAM's obligations and duties under the Portfolio Management Agreement.

35.     The losses of the members of the Class were not the result of mere errors in investment judgment on the part of Deutsche Bank, but rather were the result of imprudence, conflicts of interest and ill consideration. Deutsche Bank abandoned the Trust at the expense of the Noteholders and Certificateholders in order to eliminate its own conflicts and create a corporate opportunity for itself. Deutsche Bank is a market maker in many of the instruments underlying the Trust's investments. The conflict created, where Deutsche Bank was a competitor with respect to the underlying assets, was not present when Scudder was an independent entity.

36.     In 1998, Debussy had also invested in a loan trust entitled Riverside I. In contrast to the Riverside II Trust, the notes issued by Riverside I were owned by entities independent of Deutsche Bank. At the time that Deutsche Bank acquired Scudder, the noteholders of Riverside I replaced DeAM as Portfolio Manager with AIG Global Investment Corp. effective December 15, 2002. Riverside I was liquidated in 2004 at a significantly higher return than recognized through the liquidation of Riverside II. In fact, holders of Riverside I notes received a 100% return of their principal and holders of certificates received over 2/3 of their principal on top of their quarterly distributions.

37.     With respect to Riverside II, rather than finding a successor Portfolio Manager, as permitted by the Portfolio Management Agreement, Deutsche Bank chose instead to abandon the

Trust, to terminate the swap and to prematurely liquidate the Reference Loan Portfolio into a highly distressed market. Where Deutsche Bank was able to exercise control through its ownership of Scudder, it did so in it own best interest to the detriment of the holders of Trust securities.

38.     Deutsche Bank misappropriated and misapplied many of the Trust's distressed loans and equity positions in breach of its duty to the Trust and its participants. Given Deutsche Bank's business, it is probable that Deutsche Bank itself may have bought the underlying assets of the Trust, *i.e.*, the bank debt, at a bargain in the distressed market into which it chose to sell the Riverside II assets. While AIG specifically excluded itself as a bidder in the auction for the loan portfolio of Riverside I, Deutsche Bank did no such thing and could have bid for the very assets it was selling on behalf of Riverside II. Not surprisingly, Deutsche Bank was in fact a bidder for the Riverside I portfolio in 2004.

39.     Deutsche Bank's improper actions resulted in millions of dollars of losses for the Trust's Noteholders and Certificateholders. Specifically, when Deutsche Bank prematurely abandoned Riverside II, it eliminated more than six and a half years of swap receipts accruing to the Trust for the benefit of both the Noteholders and Certificateholders. The lost swap payments and the deprivation of continued participation in the Trust for the remainder of its term resulted in significant losses to the Certificateholders and Noteholders.

40.     Further, by terminating prematurely, Deutsche Bank dumped the Reference Loan Portfolio on a weak loan market and thereby severely diminished the investors' return. As a result, the Certificateholders received none of the $3 million originally invested, and the Noteholders received only $20 million of the $41 million invested.

## SECOND CAUSE OF ACTION

(Breach of Contract)

41.    Plaintiff repeats and realleges each allegation set forth in paragraph one through forty as though set forth fully herein.

42.    At all relevant times, the Portfolio Manager was obligated under its contract with the Trust to "use such care and skill as a prudent man would exercise or use under the circumstances" in connection with the discharge of its duties under the Portfolio Management Agreement.

43.    The Portfolio Management Agreement, entered into by the Trust at the direction of and for the benefit of the holders of the Securities, created mutual obligations, was supported by valid consideration, and was binding on defendants and enforceable by plaintiff and the other Class members against defendants.

44.    The Trust and its beneficiaries performed their obligations under the contract.

45.    Defendant DeAM breached its obligation under the Portfolio Management Agreement to act prudently by firing experienced managers, abandoning the Trust despite the impact on investors, and liquidating the Reference Loan Portfolio in a manner that failed to maximize value for the Trust.

46.    Plaintiff has put defendants on notice of the breach through its communications with Chase Delaware and Chase Delaware's subsequent communications with DeAM.

47.    As a result of this breach, Plaintiff and the Class have been damaged in an amount to be determined at trial. Deutsche Bank dumped the Reference Loan Portfolio on a weak loan market and thereby severely diminished the investors' return. As a result, the Certificateholders received none of the $3 million originally invested, and the Noteholders received only $20 million of the $41 million invested. Further, when Deutsche Bank prematurely abandoned

12

Riverside II, it eliminated more than six and a half years of swap receipts accruing to the Trust

for the benefit of both the Noteholders and Certificateholders

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

WHEREFORE, plaintiff and members of the Class demand judgment against defendants

as follows:

      A.     Declaring that this action is properly maintainable as a class action and certifying plaintiffs as the representatives of the Class;

      B.     Declaring that defendants have breached their fiduciary and other duties to plaintiff and the other members of the Class;

      C.     Declaring that defendant have breached the terms of the Portfolio Management Agreement;

      D.     Ordering an accounting with respect to any profits to Deutsche Bank from the sale of any assets of Riverside II to itself and the disgorgement of any such profits;

      E.     Awarding compensatory damages against defendants individually and severally in an amount to be determined upon the proof submitted to this Court;

      F.     Awarding costs and disbursements, including plaintiff's counsel's fees and experts' fees; and

13

G. Granting such other and further relief as to the Court may seem just and proper.

Dated: April 14, 2005

ABBEY GARDY, LLP

By: _____

Arthur N. Abbey (AA-8079)
Karin E. Fisch (KF-1082)
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 684-5191

Attorneys for Plaintiff

14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DEBUSSY LLC, on behalf of itself and all others
similarly situated,

                Plaintiff,

   -   against –

DEUTSCHE BANK AG and DEUTSCHE ASSET
MANAGEMENT,

                Defendants.

Index No. 05/601328

**STATEMENT OF SERVICE BY
MAIL AND
ACKNOWLEDGEMENT OF
RECEIPT BY MAIL OF
SUMMONS AND COMPLAINT**

## A.    STATEMENT OF SERVICE BY MAIL

To:    Deutsche Bank AG
        280 Park Avenue
        New York, New York 10017
        Attention: Legal Department

The enclosed summons and complaint are served pursuant to section 312-a of the Civil

Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and

complete the acknowledgment part of this form and mail or deliver one copy of the completed

form to the sender within thirty (30) days from the date you receive it. You should keep a copy

for your records or your attorney. If you wish to consult an attorney, you should do so as soon as

possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or

the party on whose behalf you are being served) will be required to pay expenses incurred in

serving the summons and complaint in any other manner permitted by law, and the cost of such

service as permitted by law will be entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this statement and acknowledgement does not relieve you of the necessity to answer the complaint. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult with an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgement.

### B. <u>ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND COMPLAINT</u>

I received a summons and complaint in the above captioned matter at: _____

PLEASE CHECK ONE OF THE FOLLOWING; IF 2 IS CHECKED, COMPLETE AS INDICATED:

1.     (   )   I am not in the military service.

2.     (   )   I am in the military service, and my rank, serial number and branch of service are as follows:

Rank: _____

Serial number: _____

Branch of Service: _____

2

TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

Date:_____

_____
Signature

_____
Print name

_____
Name of Defendant for which acting

_____
Position with Defendant for which acting
(i.e., officer, attorney, etc.)

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DEBUSSY LLC, on behalf of itself and all others
similarly situated,

                 Plaintiff,

    -  against –

DEUTSCHE BANK AG and DEUTSCHE ASSET
MANAGEMENT,

                 Defendants.

Index No. 05/601328

**STATEMENT OF SERVICE BY
MAIL AND
ACKNOWLEDGEMENT OF
RECEIPT BY MAIL OF
SUMMONS AND COMPLAINT**

A.    STATEMENT OF SERVICE BY MAIL

To:    Deutsche Asset Management
        280 Park Avenue
        New York, New York 10017
        Attention: Legal Department

The enclosed summons and complaint are served pursuant to section 312-a of the Civil

Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and

complete the acknowledgment part of this form and mail or deliver one copy of the completed

form to the sender within thirty (30) days from the date you receive it. You should keep a copy

for your records or your attorney. If you wish to consult an attorney, you should do so as soon as

possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or

the party on whose behalf you are being served) will be required to pay expenses incurred in

serving the summons and complaint in any other manner permitted by law, and the cost of such

service as permitted by law will be entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this statement and acknowledgement does not relieve you of the necessity to answer the complaint. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult with an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgement.

## B. ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I received a summons and complaint in the above captioned matter at: _____

_____

PLEASE CHECK ONE OF THE FOLLOWING; IF 2 IS CHECKED, COMPLETE AS INDICATED:

1.   (   )   I am not in the military service.

2.   (   )   I am in the military service, and my rank, serial number and branch of service are as follows:

        Rank: _____

        Serial number: _____

        Branch of Service: _____

2

TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

Date:_____

_____
Signature

_____
Print name

_____
Name of Defendant for which acting

_____
Position with Defendant for which acting
(i.e., officer, attorney, etc.)

3

Index No. 05/601328

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DEBUSSY LLC, on behalf of all others similarly situated,

Plaintiff,

- against -

DEUTSCHE BANK AG and
DEUTSCHE ASSET MANAGEMENT,

Defendants.

## SUMMONS AND COMPLAINT

ABBEY GARDY, LLP

Attorney(s) for   Plaintiff

212 EAST 39TH STREET
NEW YORK, N.Y. 10016
(212) 889-3700

05 Civ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBUSSY LLC, on behalf of itself and all others similarly
situated,

Plaintiff,

against

DEUTSCHE BANK AG and DEUTSCHE ASSET
MANAGEMENT,

Defendants.

JOINT NOTICE OF REMOVAL

SIDLEY AUSTIN BROWN & WOOD LLP

ATTORNEYS FOR    Defendants Deutsche Bank AG and
Deutsche Asset Management

787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300