UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEBUSSY LLC, on behalf of itself and all others
similarly situated,

                     Plaintiff,

          against

DEUTSCHE BANK AG and DEUTSCHE ASSET
MANAGEMENT,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

05 Civ. 5550 (SHS) (JCF)

(Electronically Filed)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

### SIDLEY AUSTIN BROWN & WOOD LLP

ATTORNEYS FOR   Defendants Deutsche Bank AG and
Deutsche Asset Management

ANDREW W. STERN (AS 7094)
SAIMA S. AHMED (SA 9342)
787 SEVENTH AVENUE
NEW YORK, NEW YORK  10019
(212) 839-5300

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii-iv

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS ............................................................................................................... 3

I.   REDEMPTION OF NOTES AND RESULTING LIQUIDATION OF TRUST ................. 4

    A.   The Noteholders' Decision to Redeem and the Indenture Agreement ......................... 4

    B.   Certificateholder's Resulting Redemption and the Trust Agreement............................ 5

    C.   Actions of Portfolio Manager and The Portfolio Management Agreement ................. 6

II.  RECOGNITION AND ACCEPTANCE OF POTENTIAL CONFLICTS OF INTEREST.. 7

ARGUMENT ................................................................................................................................. 8

I.   PLAINTIFF LACKS STANDING BECAUSE THE ALLEGATIONS IN THE
    COMPLAINT DO NOT GIVE RISE TO A DIRECT CAUSE OF ACTION ...................... 9

II.  THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ..... 13

    A.   Plaintiff Is Not A Party To, Or Third-Party Beneficiary Of, The Portfolio
    Management Agreement.......................................................................................... 13

    B.   Plaintiff Fails To Plead A Breach Of Any Provision Of The Portfolio Management
    Agreement............................................................................................................. 16

III. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY
    DUTY ................................................................................................................................ 17

    A.   A Fiduciary Relationship Did Not Exist Between Plaintiff And DeAM .................... 17

    B.   The Breach of Fiduciary Duty Claim is Duplicative of the Breach of Contract
    Claim.................................................................................................................... 18

    C.   The Breach of Fiduciary Duty Claim Is Precluded By The Express Terms Of The
    Contract............................................................................................................... 19

IV.  DEUTSCHE BANK IS NOT A PROPER PARTY ........................................................... 21

CONCLUSION.............................................................................................................................. 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

Banco Espirito Santo v. Citibank,
   No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ..........15, 16

Brug v. Enstar Group, Inc.,
   755 F. Supp. 1247 (D. Del. 1991)...............................................................................9

Core-Mark Int'l Corp. v. Commonwealth Insur. Co.,
   05 Civ. 183 (WHP), 2005 WL 1676704 (S.D.N.Y. July 19, 2005)...............................8

De Jesus v. Sears, Roebuck & Co.,
   87 F.3d 65 (2d Cir. 1996)..........................................................................................21

Dressner v. Utility.Com, Inc.,
   371 F. Supp. 2d 476 (S.D.N.Y. 2005).........................................................................8

In re Eaton Vance Mut. Funds Fee Litig.,
   04 Civ. 1144 (JGK), 2005 WL 1813001 (S.D.N.Y. Aug. 1, 2005) .........................9, 10

First Nationwide Bank v. Gelt Funding Corp.,
   27 F.3d 763 (2d Cir. 1994)..........................................................................................8

Henneberry v. Sumitomo Corp.,
   04 Civ. 2128 (PKL), 2005 WL 991772 (S.D.N.Y. Apr. 27, 2005).................13, 14, 17

Lewis Tree Serv. v. Lucent Tech., Inc.,
   99 Civ. 8556 (JGK), 2000 WL 1277303 (S.D.N.Y. Sept. 8, 2000).............................17

In re Livent, Inc. Noteholders Sec. Litigation,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001).........................................................................8

In re Merrill Lynch & Co., Inc.,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003).........................................................................8

Piccoli v. Calvin Klein Jeanswear Co.,
   19 F. Supp.2d 157 (S.D.N.Y. 1998)...........................................................................15

Rosenfeld v. Black,
   336 F. Supp. 84 (S.D.N.Y. 1972) ..............................................................................18

Ross v. FSG Privatair, Inc,
   03 Civ. 7292 (NRB), 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004) ..........................16

Sel-Leb Marketing, Inc. v. Dial Corp.,
  01 Civ. 9250 (SHS), 2002 WL 1974056 (S.D.N.Y. Aug. 27, 2002) ............................8

United States v. Bestfoods,
  524 U.S. 51 (1998).........................................................................................................21

Wells Fargo Bank v. Energy Ammonia Transp. Corp.,
  01 Civ. 5861 (JSR),  2002 WL 1343757 (S.D.N.Y. June 18, 2002)............................14

Wolff v. Rare Medium, Inc.,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002).........................................................................17

In re WorldCom, Inc.,
  No. 02-13533 (AJG), 323 B.R. 844 (Bankr. S.D.N.Y. 2005)................................10, 18

## STATE CASES

Agostino v. Hicks,
  845 A.2d 1110 (Del. Ch. 2004)....................................................................................11

Alicea v. City of New York,
  145 A.D.2d 315, 534 N.Y.S.2d 983 (1st Dep't 1988)....................................................13

Alpert v. NASD, LLC,
  600657/04, 2004 WL 3270188 (Sup. Ct. N.Y. Co. July 28, 2004) ........................10, 11

Beam v. Martha Stewart,
  845 A.2d 1040 (Del. 2004) .........................................................................................13

Brown v. Bedell,
  263 N.Y. 177 (1934) .....................................................................................................9

Confin International Investment v. AT&T Corp.,
  No. 19997, 2004 WL 485464 (Del. Ch. March 12, 2004)......................................10, 11

Dietrich v. Harder,
  857 A.2d 1017 (Del. Ch. 2004)................................................................................10, 12

FS Parellel Fund v. Ergen,
  Civ. No. 19853, 2004 WL 3048751 (Del. Ch. Nov. 3 2004).................................11, 18

In re First Interstate Bancorp,
  729 A.2d 851 (Del. Ch. 1998)......................................................................................12

Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,
   66 N.Y.2d 38 (1985) ............................................................................13, 15

Gale v. Bershad,
   Civ. No. 15714, 1998 WL 118022 (Del. Ch. March 4, 1998) ...............................19, 20

Greenspun v. Lindley,
   36 N.Y.2d 473, 369 N.Y.S.2d 123 (1975) ......................................................................9

HB Korenvaes Investment, L.P. v. Marriott Corp.,
   Civ. No. 12922, 1993 WL 257422 (Del. Ch. June 9, 1993) .........................................19

Kramer v. Western Pac. Industrial Inc.,
   546 A.2d 348 (Del. 1988) ............................................................................................11

Lord v. Northside Sav. Bank,
   5 N.Y.L.J. 28 (Sup. Ct. N.Y. Co. May 27, 1997) ........................................................12

Nepco Forged Prod. v. Con. Ed.,
   99 A.D.2d 508, 470 N.Y.S.2d 680 (2d Dep't 1984).....................................................14

Rottenberg v. Pfeiffer,
   59 A.D.2d 756, 383 N.Y.S.2d 189 (Sup. Ct. N.Y. Co. 1976).........................................9

Sergeants Benevolent Associate Annuity Fund v. Renck,
   19 A.D.3d 107, 796 N.Y.S.2d 77 (4th Dep't 2005) ......................................................19

Simons v. Cogan,
   542 A.2d 785 (Del. 1987) ............................................................................................20

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
   845 A.2d 1031 (Del. 2004) .....................................................................................9, 10

William Kaufman Organization Ltd. v. Graham & James LLP,
   269 A.D.2d 171, 703 N.Y.S.2d 439 (1st Dep't 2000)..............................................18, 19

Zion v. Kurtz,
   50 N.Y.2d 92, 428 N.Y.S.2d 199 (1980) ........................................................................9

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 8

Fed. R. Civ. P. 23.1 ............................................................................................................14

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Deutsche Asset Management ("DeAM")[1] and Deutsche Bank AG ("Deutsche Bank") respectfully submit this memorandum of law in support of their motion to dismiss the purported Class Action Complaint of plaintiff Debussy LLC ("Debussy").

## PRELIMINARY STATEMENT

Plaintiff purports to bring this action on behalf of "all direct and indirect investors" in the Riverside Loan Trust II (the "Trust"), a business trust established under the laws of Delaware for the purpose of investing derivatively in senior secured bank loans. The action is brought against DeAM, the purported portfolio manager of the Trust, and Deutsche Bank, the ultimate parent company of the actual portfolio manager, DIMA, and seeks to recover damages allegedly resulting "from the portfolio manager's breach of fiduciary duty and breach of contract in connection with its premature dismantling of the Trust to serve its own best interests and to the detriment of the holders of the securities of the Trust." Complaint ("Compl.") ¶ 1. In sweeping and conclusory allegations, the Complaint asserts that DeAM breached its purported fiduciary duty (Count I) and breached the Portfolio Management Agreement between the Trust and DeAM (Count II), allegedly resulting in loss of value to the Trust. This loss of value then allegedly diminished plaintiff's return on its investment in the Trust.

Because, as a matter of law, plaintiff fails to state a cause of action for either breach of contract or breach of fiduciary duty, the Complaint should be dismissed.

First, plaintiff cannot assert the claims in this action as direct claims on behalf of the Trust's investors, rather than as derivative claims belonging to the Trust. The gravamen of

---

[1] Although plaintiff purports to sue Deutsche Asset Management, which plaintiff alleges is "the marketing name in the United States for the asset management activities of Deutsche Bank AG and other Deutsche Bank entities" (Compl. ¶ 12), this is not a legal entity with the capacity to sue or be sued. Deutsche Investment Management Americas Inc. ("DIMA") is the entity that served as portfolio manager for the Trust. DIMA is an investment adviser registered with the Securities and Exchange Commission.

1

the Complaint is that defendants improperly caused the premature liquidation of the Trust's assets, which resulted in a lower-than-hoped-for amount of proceeds received by the Trust. Accepting plaintiff's allegations as true, any purported harm that was suffered was suffered by the Trust, not the investors directly. Plaintiff's inability to demonstrate any alleged injury to it that is independent of injury to the Trust mandates dismissal of its claims.

Second, even if the claims could be brought directly, plaintiff's claim for breach of contract would fail for lack of standing. As plaintiff admits, Debussy was not a party to the contract under which it seeks to assert a claim -- the Portfolio Management Agreement. Nor, as the terms of the Portfolio Management Agreement make clear, was it an intended third party beneficiary to the Agreement. In such circumstances, a claim for breach of contract cannot lie.

Moreover, even if plaintiff could establish standing and assert a claim for breach of contract, which it cannot, its claim would be deficient because plaintiff does not allege the breach of any provisions of the Portfolio Management Agreement. As discussed in detail below, the Portfolio Management Agreement, along with the Indenture and Trust Agreement, to which Debussy was a party, spell out in detail the steps to be taken in the event of a redemption demand by a Noteholder (which would include compulsory redemption of the plaintiff's interest in the Trust) and subsequent liquidation of the Trust's holdings. Plaintiff does not allege violation of any of these provisions. Indeed, plaintiff's inability to identify any actual breach is highlighted by its reliance on bald legal conclusions unsupported by any factual allegations: courts, however, have repeatedly held that this elevation of rhetoric over substance is insufficient to withstand a motion to dismiss. As more fully discussed below, Debussy, as a sophisticated, "accredited" investor, accepted this arrangement when it chose to invest in the Trust, and it may not ask this

2

Court ex post facto to redefine the rights and obligations of the parties involved because it ultimately was dissatisfied with the results of that investment.

Third, plaintiff's claim for breach of fiduciary duty, even if it were properly alleged directly rather than derivatively, should be dismissed for the additional reason that, as plaintiff concedes, any fiduciary duty that the Portfolio Manager owed was to the Trust, not the Trust's investors, like Debussy. Moreover, the breach of fiduciary duty claim is entirely duplicative of the breach of contract claim and should be dismissed for this reason as well. Finally, like the breach of contract claim, plaintiff's breach of fiduciary duty claim is negated as a matter of law by the very terms of the agreement that, according to plaintiff, created the fiduciary duty to the Trust.

Finally, in addition to all of the foregoing reasons requiring dismissal of the Complaint against both defendants, the Complaint should be dismissed against the parent company, Deutsche Bank, because plaintiff has not alleged any conduct whatsoever on the part of Deutsche Bank, nor has it provided a basis for piercing the corporate veil between Deutsche Bank and its subsidiaries and affiliates.

## STATEMENT OF FACTS[2]

Debussy is a sophisticated investor, a limited liability corporation created for the purpose of investing in Riverside Loan Trust II. Compl. ¶ 10. The Trust issued two types of securities: Notes and Certificates. Id. ¶ 13. The Notes were purchased by two mutual funds managed by Scudder Kemper Investments, Inc. ("Scudder"), which also served as the Portfolio Manager for the Trust. Id. ¶¶ 15, 18. On or around July 16, 1998, plaintiff Debussy entered into

---

[2] The Statement of Facts assumes, for purposes of this motion only, the truth of the factual allegations of the Complaint. It is also based upon the terms of the governing agreements from which plaintiff's claims purportedly arise, which agreements are referenced and relied upon in the Complaint, a true and correct copy of which is annexed as Exhibit A to the Affidavit of Andrew W. Stern, dated August 23, 2005 ("Stern Aff.")

3

various agreements in connection with its purchase of 100 percent of the Certificates issued by the Trust. Id. ¶¶ 14-15.

In 2002, Deutsche Bank acquired Scudder, and Deutsche Investment Management Americas Inc. ("DIMA") succeeded Scudder as both the Portfolio Manager of the Trust and the manager of the two mutual funds that remained the Trust's sole Noteholders. Id. ¶ 19. In or around July 2002, these two mutual funds exercised redemption rights relating to their investments "pursuant to the terms of the Indenture and the Trust Agreement." Id. ¶ 23. Upon the Noteholders' redemption demand, and as a result of the operation of the applicable agreements, the holdings of the Trust ultimately were liquidated and the Trust dissolved. Id.

As set forth below, the Trust Agreement, Indenture, and Portfolio Management Agreement prescribed the steps to be taken in the event of a redemption demand by Noteholders. Rhetoric aside, plaintiff does not allege a breach of any of these provisions or a failure to comply with any of these governing agreements. Indeed, plaintiff concedes that the redemption demand by the Noteholders and subsequent dissolution of which it complains were carried out "pursuant to the terms" of these agreements. Compl. ¶ 23.

## I.    REDEMPTION OF NOTES AND RESULTING LIQUIDATION OF TRUST

### A.    <u>The Noteholders' Decision to Redeem and the Indenture Agreement</u>

The Indenture Agreement, dated as of July 16, 1998, between Riverside Loan Trust II, as Issuer and The Chase Manhattan Bank, as Indenture Trustee ("Indenture "), sets forth the right of the Noteholders to redeem all or any portion of their Notes.[3] The Indenture expressly provides that if, after any of the Noteholders exercises its right to redeem its Notes, the

---

[3] A true and correct copy of relevant excerpts of the Indenture is annexed as Exhibit B to the Stern Aff. Although Debussy was not party to the Indenture, Debussy agreed, in connection with its investment in the Trust, to "be bound by the terms of . . . the Indenture." See Transfer Certificate for Initial Certificateholder, dated July 16, 1998, annexed to the Stern Aff. as Exhibit C, ¶13.

outstanding Note amount is less than $25,000,000, then all outstanding Notes shall be redeemed.

Specifically, Section 8.1 provides, in pertinent part,

> Section 8.1 Partial Redemption. On the Lock-out Date,[4] and each Payment Date thereafter, *any Noteholder may on at least thirty (30) days prior written notice to the Indenture Trustee, the Noteholders and the Certificateholders require the Issuer to redeem all or any portion of the Notes held by such Noteholder on the next succeeding Payment Date* for a redemption amount determined as set forth below . . . . Upon receipt of such redemption notice, the Trustee shall also promptly determine whether the Outstanding Note Amount, after taking into account such redemption amount and any additional Notes purchased on or pursuant to such date pursuant to Section 2.2(g), will be less than $25,000,000, and, if it determines that the Outstanding Note Amount will be less than $25,000,000, shall send notice to all Noteholders and the Issuer to the effect that one or more Noteholders elected to require the Issuer to redeem all or a portion of the Notes held by such Noteholder on such payment date, and that, *as a result, all Outstanding Notes shall be redeemed on such Payment Date pursuant to this Section 8.1.* . . .

Stern Aff., Ex. B, §8.1 (emphasis added). As noted above, the two Scudder mutual funds owned 100 percent of the Notes. Thus, once the Noteholders made the decision to redeem the entirety of their Notes (Compl. ¶ 23), all of the outstanding notes were required to be redeemed.

### B.    Certificateholder's Resulting Redemption and the Trust Agreement

Upon the decision by the Noteholders to demand redemption of the Notes in accordance with the terms of the Indenture Agreement, the Certificates, all of which were held by Debussy as Certificateholder, *had* to be redeemed in whole pursuant to the Trust Agreement. Specifically, Section 9.1(e) of the July 16, 1998 Trust Agreement between Debussy, as Initial Certificateholder and Chase Manhattan Bank Delaware, as Trustee, provides:

> Subject to Section 3.9, upon any redemption of the Notes in whole in accordance with the terms of the Indenture or upon the termination of the Swap Agreement, *the Certificates shall be redeemed in whole*.

---

[4] The Lock-out Date is defined in the documents as the date 48 months after issuance of the Notes. See Confirmation to the ISDA Master Agreement, dated as of July 16, 1998, between Riverside Loan Trust II and the Swap Counterparty at 26, a true and correct copy of relevant excerpts of which is annexed to the Stern Aff. as Exhibit D. Thus, redemption was first available to the Noteholders in July 2002.

Stern Aff., Ex. E, §9.1(e) (emphasis added).[5] As Debussy concedes (Compl. ¶ 23), the

Trust Agreement, under the aforementioned circumstances, mandated that the Trust's

assets would thereafter be liquidated and the Trust dissolved.  See Stern Aff. Ex. E,

§11.1[6]; Ex. B, §8.1.

C.    **Actions of Portfolio Manager and The Portfolio Management Agreement**

Pursuant to the July 16, 1998 Portfolio Management Agreement between the

Trust and Scudder (DIMA's predecessor-in-interest as Portfolio Manager),[7] the Portfolio

Manager was obligated, among other things, to provide management services to the Trust,

including:

> *evaluating and selecting Reference Loans*, directing the [Trust]
> with respect to additions of Reference Loans to *and deletions*
> *(including, without limitation, deletions for the purpose of allowing*
> *the release of funds by the [Trust] in connection with a voluntary*
> *redemption by a Noteholder of its Notes* in accordance with the
> provisions of Article 8 of the Indenture) of Reference Loans from
> the Reference Loan Portfolio . . . (*including causing the deletion in*
> *whole or in part of loans comprising or to comprise the Reference*
> *Loan Portfolio* and the selection of loans for such purpose . . .

Stern Aff., Ex. F, §1(b) (emphasis added).  Thus, the Portfolio Manager was obligated to

liquidate the assets of the Trust in the event of a Noteholder's demand for redemption.

In addition, the Portfolio Management Agreement (ostensibly to preclude claims

like those at bar) expressly provides that the Portfolio Manager is "fully protected" in acting

pursuant to instructions given by Noteholders representing more than 50% of outstanding Note

---

[5]  A true and correct copy of relevant excerpts of the Trust Agreement is annexed to the Stern Aff. as Ex. E.

[6]  The Trust Agreement also makes clear that Debussy, as a Certificateholder, could have directed the Trustee to take or refrain from taking any action "only if such action or inaction would not be contrary to any obligation of the Trust or the Trustee under this Agreement, the Indenture, the Notes or the Swap Agreement." Stern Aff., Ex. E, § 7.16.

[7]  A true and correct copy of relevant excerpts of the Portfolio Management Agreement is annexed to the Stern Aff. as Exhibit F.

Amounts. Specifically, Section 8 of the Portfolio Management Agreement provides, in relevant part:

> 8.      Actions by Portfolio Manager
> As to any matter not expressly provided for by this Agreement, the Indenture, the Trust Agreement or the Swap Agreement, the Portfolio Manager shall be in all cases be fully protected in acting, or in refraining from acting, hereunder or thereunder in accordance with instructions given by Noteholders representing more than 50% of the Outstanding Note Amount and such action taken or failure to act pursuant thereto shall be binding on such parties.

Stern Aff., Ex. F, §8.

## II.   RECOGNITION AND ACCEPTANCE OF POTENTIAL CONFLICTS OF INTEREST

The issue of the existence of potential conflicts of interest with respect to the activities of the Portfolio Manager vis-à-vis the Trust, namely Scudder's role as the Portfolio Manager both for the Trust and the two Noteholders, the Scudder mutual funds, was expressly discussed in the Portfolio Management Agreement and acknowledged by plaintiff. Thus, Section 5 of the Portfolio Management Agreement provides, in relevant part,

> The Issuer, each Noteholder by acquisition of an interest in a Note, and *each Certificateholder by acquisition of an interest in a Certificate, acknowledges that it has been apprised of the possible conflict of interest that may exist between the activities of the Portfolio Manager under this Agreement, the ownership of Notes or Certificates by the Portfolio Manager or its Affiliates,* and the other business activities of the Portfolio Manager and its Affiliates, and specifically agree that the Portfolio Manager and its Affiliates may, among other things, undertake any of the foregoing activities.

Stern Aff., Ex. F, §5 (emphasis added). Plaintiff does not allege that the substitution of DIMA for Scudder as Portfolio Manager in any way altered the potential for conflicts of interest accepted by Debussy from the inception of its investment.

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6), "[d]ismissal is proper when the plaintiff fails to plead the basic elements of a cause of action." Core-Mark Int'l Corp. v. Commonwealth Insur. Co., 05 Civ. 183 (WHP), 2005 WL 1676704, at * 3 (S.D.N.Y. July 19, 2005) (citation omitted). While the Court must accept as true the factual allegations in a Complaint and draw reasonable inferences in favor of the non-moving party in evaluating the motion, it is not required to accept as true mere "conclusions of law or unwarranted deductions." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).   Moreover, a Court is not required to credit factual allegations that are "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).

Indeed, this Court has held that "it is well settled that if documents are attached to the complaint or are an integral part of the complaint, and the plaintiff had possession or knowledge of those documents, the court may properly consider those documents on a motion to dismiss pursuant to Rule 12(b)(6)." Sel-Leb Marketing, Inc. v. Dial Corp., 01 Civ. 9250, 2002 WL 1974056, *3 (S.D.N.Y.  Aug. 27, 2002) (Stein, J.) (citation omitted) (granting motion to dismiss based on terms of letter agreement); see Dressner v. Utility.Com, Inc., 371 F. Supp.2d 476, 480 (S.D.N.Y. 2005) (Stein, J.).  Moreover, "where the court finds that the plaintiff relied on the terms and effect of documents neither annexed to nor incorporated into the complaint, the court may also consider those documents." Sel-Leb, 2002 WL 1974056 at *3; see also In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), aff'd, 396 F.3d 161 (2d Cir. 2005) (internal citations omitted) (court may consider, among other things, documents attached to, incorporated by reference or integral to complaint in deciding a Rule 12(b)(6)

motion). Accordingly, this Court may and should consider, in deciding this motion, among other things, the terms of the Portfolio Management Agreement, the Indenture, and the Trust Agreement, all of which are referenced or relied upon by plaintiff in the Complaint. See, e.g., Compl. ¶¶ 14, 16, 18, 23, 32.

## I. PLAINTIFF LACKS STANDING BECAUSE THE ALLEGATIONS IN THE COMPLAINT DO NOT GIVE RISE TO A DIRECT CAUSE OF ACTION

The Complaint must be dismissed because the claims that plaintiff seeks to assert are in fact derivative claims, and plaintiff therefore lacks standing. Under Delaware law,[8] a court "must look to the nature of the wrongs alleged in the complaint in order to determine whether a cause of action asserted by a shareholder is a derivative one or one that may be raised in an individual or class action."[9] Brug v. Enstar Group, Inc., 755 F. Supp. 1247, 1257 (D. Del. 1991). An "individual or class action suit may *only* be maintained when the shareholder plaintiffs have been injured directly, rather than indirectly through the harm to the corporation itself." Id. (emphasis added).

In 2004, the Supreme Court of Delaware adopted a two-part test to determine whether an action should be brought as a derivative or direct action. See Tooley v. Donaldson,

---

[8] Riverside Loan Trust II was established as a business trust under Delaware law. Compl. ¶ 1  Pursuant to the Trust Agreement, all disputes "shall in all respects be governed by, and construed in accordance with, the laws of the state of Delaware, including all matters of construction, validity and performance." See Stern Aff., Ex. E, Art. XII, § 12.12. Thus, Delaware law determines whether plaintiff's claims must be brought derivatively rather than directly. See also In re Eaton Vance Mut. Funds Fee Litig., 04 Civ. 1144 (JGK), 2005 WL 1813001, at *10 (S.D.N.Y. Aug. 1, 2005) (applying law of Massachusetts, the state of Funds' incorporation, to determine whether claims must be brought derivatively); Zion v. Kurtz, 50 N.Y.2d 92, 100, 428 N.Y.S.2d 199, 203 (1980) (finding a New York court must apply the law of the place of incorporation in matters that involve shareholders and determining the proper party to bring suit); Greenspun v. Lindley, 36 N.Y.2d 473, 369 N.Y.S.2d 123 (1975) (finding because a trust was expressly formed under Massachusetts law, a New York court should apply the laws of Massachusetts).

[9] Because Debussy's relationship to the Trust is analogous to that of a shareholder and a corporation, the law governing corporations applies here. See Brown v. Bedell, 263 N.Y. 177, 187 (1934) (trust certificate holders have "a status like that of shareholders in a corporation"); Rottenberg v. Pfeiffer, 59 A.D.2d 756, 383 N.Y.S.2d 189, 192 (Sup. Ct. N.Y. Co. 1976), aff'd, 398 N.Y.S.2d 703 (2d Dep't 1977) ("Since a demand upon stockholders of a business corporation would be a condition precedent to a derivative action, so also would such a demand upon the shareholders of a business trust be a prerequisite to a derivative action such as the instant one.").

Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004). The two-part test asks: (1) who suffered the alleged harm (the corporation or the stockholder individually), and (2) who would receive the benefit of the recovery or other remedy (the corporation or the stockholder individually). See id. The "stockholder's claimed direct injury must be independent of any alleged injury to the corporation" and the "stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Id. at 1039; see Alpert v. NASD, LLC, 600657/04, 2004 WL 3270188, *17 (Sup. Ct. N.Y. Co. July 28, 2004) (applying Delaware law) (same). Moreover, the "Court's determination of whether an action is derivative is made by looking at the nature of the wrong alleged, not the pleader's designation or stated intention." See In re WorldCom, Inc., 323 B.R. 844, 851 (Bankr. S.D.N.Y. 2005).

Here, under both prongs of the Tooley test, it is clear that the harm, as alleged in the Complaint, was suffered by the Trust rather than the Noteholders or Certificateholders directly. It is well established that a claim for breach of fiduciary duty arising from alleged mismanagement of the affairs of a corporation runs "to the corporation and not separately or independently to the stockholders." Dietrich v. Harder, 857 A.2d 1017, 1027 (Del. Ch. 2004); FS Parellel Fund v. Ergen, Civ. No. 19853, 2004 WL 3048751, at *3 (Del. Ch. Nov. 3, 2004) (holding "claims that arise from classic fiduciary principles of care and loyalty" belong to the corporation); Alpert, 2004 WL 3270188, at *17 (applying Delaware law). Thus, a breach of fiduciary duty "owed to a corporation must be addressed through a derivative claim rather than a direct claim because the harm to the investor flows through the corporation and thus the injury to the investor is only indirect." In re Eaton Vance, 2005 WL 1813001, at *11; Confin Int'l Inv. v. AT&T Corp., No. 19997, 2004 WL 485464, at *2 (Del. Ch. March 12, 2004) (dismissing breach

of fiduciary duty claim brought as direct action). Tellingly, the Complaint here expressly acknowledges that DeAM's fiduciary duties were to the Trust, not the shareholders, and accordingly are derivative. See Compl. ¶ 18 ("By entering into the Portfolio Management Agreement, the Portfolio Manager expressly agreed to be held to a prudent man standard *in performing services to the Trust*") (emphasis added).

Moreover, the gravamen of the Complaint here is that DeAM allegedly failed to liquidate the Trust's holdings in the manner best designed to maximize the proceeds to be received by the Trust. The result, plaintiff claims, is that Debussy, as Certificateholder, did not receive its hoped-for distribution. Thus, plaintiff complains about a loss in value of its investment in the Trust -- a classic derivative claim. See Compl. ¶¶ 26, 33, 39, 40, 47. It is axiomatic that "any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder. Thus, the wrong alleged is entirely derivative in nature." Kramer v. Western Pac. Indus. Inc., 546 A.2d 348, 353 (Del. 1988); see also Agostino v. Hicks, 845 A.2d 1110, 1123, n. 60 (Del. Ch. 2004) ("where a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature") (citation omitted); Confin Int'l Inv., 2004 WL 485464, at *2 (holding that because plaintiff's "injury flows entirely from the diminution in value of" stock, that injury was "suffered equally by all [stockholders] and claims must be brought derivatively); Alpert, 2004 WL 3270188, at *1 ("a shareholder has no individual cause of action for losing the value of his investment") (citation omitted).

Similarly, plaintiff's allegations that "Deutsche Bank misappropriated and misapplied many of the Trusts' distressed loans" and abandoned the Trust to "create a corporate

opportunity for itself" present purely derivative claims. See In re First Interstate Bancorp, 729
A.2d 851, 862 (Del. Ch. 1998) ("mismanagement which depressed the value of stock is a wrong
to the corporation, i.e., the stockholders collectively, to be enforced by a derivative action")
(citations omitted); Compl. ¶¶ 35, 38. Indeed, Debussy even admitted in its April 30, 2004 letter
to the Trustee (see Compl. ¶¶ 27-29) that any potential harm was suffered not directly by the
Noteholders and Certificateholders, but rather by the Trust. See Stern Aff., Ex. G at 2 ("To
summarize, Deutsche Bank's egregious mismanagement *cost the Riverside II Trust (and thereby
its Certificateowners and Noteowners) in excess of $35.7 million*.")) (emphasis added).[10]  Put
simply, if DeAM failed in executing its duties as Portfolio Manager, it failed the Trust, not
Debussy.

      Application of the second prong of the Tooley test further demonstrates that the
claims alleged are derivative.  The alleged premature and inappropriate dissolution of the Trust
affected all of the Certificateholders and Noteholders equally.  See Compl. ¶ 26 ("the holders of
the Securities were deprived of over six years of swap payments").  And the damages sought by
the Complaint are the Certificateholders' and the Noteholders' respective shares of the alleged
injury to the Trust's assets. See id. ¶¶ 40, 47.  Under well-settled Delaware and New York law,
an alleged breach of fiduciary duty that harms all shareholders equally is a patently derivative
claim and any "monetary recovery for the breach[] . . . would properly belong to the [Trust],
rather than to the [investors] personally." Dietrich v. Harder, 857 A.2d 1017, 1028 (Del. Ch.
2004); Lord v. Northside Sav. Bank, 5/27/97 N.Y.L.J. 28 at p. 2 (col. 5) (Sup. Ct. N.Y. Co. May
23, 1997) ("where the alleged injury suffered by shareholders results from a breach of fiduciary
duty, such injury can only be redressed through a derivative suit on behalf of the corporation").

---

[10]  A true and correct copy of the April 30, 2004 letter from plaintiff to the Trustee is annexed to the Stern Aff. as
Ex. G.

Because the Complaint does not allege a wrong inflicted on Debussy, or seek damages based on any particular rights granted by the Certificates, plaintiff lacks standing to assert directly the claims for breach of contract and breach of fiduciary duty, and the Complaint should be dismissed.[11]

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

### A.   Plaintiff Is Not A Party To, Or Third-Party Beneficiary Of, The Portfolio Management Agreement

It is well settled that "in order to sue for breach of contract, a plaintiff must be a party to the contract . . . or an intended third party beneficiary to the contract."[12]  Henneberry v. Sumitomo Corp., 04 Civ. 2128 (PKL), 2005 WL 991772, at *12 (S.D.N.Y. Apr. 27, 2005) (dismissing breach of contract claim because plaintiff was not third party beneficiary to contract).  Although plaintiff purports to assert a claim that DeAM breached the Portfolio Management Agreement, it also concedes, as it must, that it is not a party to that contract. Compl. ¶ 18.  Therefore, in order to assert a breach of the Portfolio Management Agreement, Debussy must allege facts sufficient to support a claim that it is an intended third party beneficiary to the contract.  See Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 66 N.Y.2d 38, 44 (1985); see also Alicea v. City of New York, 145 A.D.2d 315, 534 N.Y.S.2d 983, 986 (1st Dep't 1988) ("a party claiming to be a third party beneficiary has the burden of demonstrating an enforceable right").

---

[11] Plaintiff has not satisfied the requirements for asserting a derivative claim.  It has failed to comply with Federal Rule of Civil Procedure 23.1 which requires, among other things, that a complaint that asserts derivative claims be verified.  See Fed. R. Civ. P. 23.1.  In addition, the Complaint fails to allege with the requisite particularity that the Trustee wrongfully refused to pursue the claims on behalf of the Trust.  See Beam v. Martha Stewart, 845 A.2d 1040, 1048 (Del. 2004).

[12] New York law governs the breach of contract claim because the Portfolio Management Agreement contains a valid choice of law provision providing that the agreement "SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK." Stern Aff., Ex. F § 14.

Under New York law, in order to claim third party beneficiary status, a "plaintiff must allege: '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" Henneberry, 2005 WL 991772, at *12 (emphasis added). Here, because Debussy fails to allege sufficient facts to show that the Portfolio Management Agreement was intended for its benefit and that the benefit to it is sufficiently immediate, the breach of contract claim should be dismissed.

"The best evidence of whether contracting parties intended their contract to benefit third parties remains the language of the contract itself." Nepco Forged Prod. v. Con. Ed., 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (2d Dep't 1984) (granting motion to dismiss breach of contract claim). Tellingly, while the Portfolio Management Agreement expressly confers third-party status on another entity, the Swap Counterparty (Chase Manhattan Bank), it nowhere expressly confers such status on Debussy. See Stern Aff., Ex. F, §21 ("The Swap Counterparty shall be a third party beneficiary of this Agreement"). The express inclusion in the Agreement of the Swap Counterparty -- and not Debussy -- as a third-party beneficiary unequivocally demonstrates that Debussy is not a third-party beneficiary. See, e.g., Wells Fargo Bank v. Energy Ammonia Transp. Corp., 01 Civ. 5861 (JSR), 2002 WL 1343757, at *1 (S.D.N.Y. June 18, 2002) (dismissing breach of contract claim where "the detailed [agreement], while expressly conferring third-party benefits on another entity . . . nowhere expressly confers benefits on [counterclaim-plaintiffs]").

In addition, the existence in a contract of a non-assignment clause, coupled with an inurement clause, that expressly identifies to whose benefit the agreement inures and restricts

assignability, as in the Portfolio Management Agreement, further refutes any claims of third

party beneficiary status.  See, e.g., Piccoli v. Calvin Klein Jeanswear Co., 19 F. Supp.2d 157,

163-64 (S.D.N.Y. 1998) ("an inurement clause, when taken together with a prohibition on

assignments . . . does suggest that that the parties did not intend that third parties benefit from the

contract . . . this is the wisdom behind the maxim *expressio unus est exclusio alterus.*"); Banco

Espirito Santo v. Citibank, No.  03 Civ. 1537 (MBM), 2003 WL 23018888, at *10 (S.D.N.Y.

Dec. 22, 2003), aff'd, 110 Fed. Appx. 191 (2d Cir. 2004) (presence of non-assignment and

inurement clause "further undermines the claim that the parties to those agreements intended to

benefit [plaintiff]").  Here, the Portfolio Management Agreement contains non-assignment and

inurement clauses similar to those held in Piccoli and Banco Espirito to expressly negate an

intent to benefit a third party.   Specifically, Section 12 of the Agreement provides, in relevant

part:

> This Agreement shall be binding upon and inure to the benefit of the
> parties hereto and their respective heirs, personal representatives,
> successors, transferees and permitted assigns as provided herein.  The
> Portfolio Manager may not assign this Agreement (including its rights and
> duties hereunder) without the consent of the Issuer, the Swap
> Counterparty, Noteholders representing more than 50% of the Outstanding
> Certificate Balance and Certificateholders representing more than 50% of
> the Outstanding Certificate Balance which consent may be withheld in
> each case, in the sole and absolute discretion of the respective parties. . . .

Stern Aff., Ex. F, §12.  Thus, as the terms of the Agreement and applicable case law make clear,

plaintiff is not an intended third party beneficiary.

      Moreover, while a third party may be deemed to be an intended beneficiary if no

one other than a third party can recover if the promisor breaches the contract, see Fourth Ocean

Putnam Corp., 66 N.Y.2d at 44, here, the Trust can seek to recover for the alleged breach of the

Portfolio Management.  Nor may Debussy argue that its breach of contract claim should be

sustained because DeAM purportedly controls the Trustee's actions:  allegations that a contracting party has chosen not to assert a claim against an affiliate are insufficient to confer standing as a third party beneficiary.  See Banco Espirito, 2003 WL 23018888, at *11.  In Banco Espirito, a Portuguese bank sought to enforce a contract between the Captiva investment portfolio (in which the plaintiff had invested heavily) and Citibank, the portfolio manager.  Id. at *8.  The Portuguese bank claimed that it was a third party beneficiary to the agreement because Captiva lacked a separate identity from Citibank and would never enforce the agreement against Citibank.  Id. at *11.   The court rejected this argument, noting: "New York law permits third-party recovery when no other person *can* recover, not simply when no other person *will* recover.  Taking plaintiff's allegations as true, the Captiva funds, *even if dominated by Citibank,* can recover against Citibank."  Id. (emphasis added).  Here, irrespective of Debussy's allegations regarding the relationship between DeAM and the Trustee, Debussy is not the only party that can recover from DeAM for a breach of the Agreement and accordingly, it cannot argue that it is a third-party beneficiary.

**B.      Plaintiff Fails To Plead A Breach Of Any Provision Of The Portfolio Management Agreement**

Even if plaintiff had standing, the breach of contract claim is deficient inasmuch as plaintiff fails to allege -- because it cannot -- the breach of any specific provision of the Portfolio Management Agreement.

It is a bedrock principle of contract law that "where a breach of contract claim fails to denote the 'essential terms of the parties' purported contract, *including the specific provisions of the contract upon which liability is predicated,*' it will be dismissed."  Ross v. FSG Privatair, Inc, 03 Civ. 7292 (NRB), 2004 WL 1837366, *3 (S.D.N.Y. Aug. 17, 2004) (dismissing breach of contract claim where plaintiff did not allege breach of any term of the contract)

(emphasis added); see Lewis Tree Serv. v. Lucent Tech., Inc., 99 Civ. 8556 (JGK), 2000 WL 1277303, *5 (S.D.N.Y. Sept. 8, 2000) (dismissing breach of contract claim where plaintiffs "fail[ed] to identify any particular contractual provision that the defendants have alleged breached"). Because "the Court is not required to accept conclusory allegations even on a motion to dismiss," Lewis Tree Serv. , 2000 WL 1277303 at *5, " a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 210 F. Supp.2d 490, 494 (S.D.N.Y. 2002) (granting motion to dismiss, among other things, shareholders' breach of contract claim).

Here, other than reciting vague and conclusory allegations that defendants failed to act prudently and maximize value for the Trust, plaintiff fails to allege how the harm of which it complains -- the dissolution of the Trust resulting from the Noteholders' redemption demand -- arose from a breach of the Agreement. This is hardly surprising since the Trust Agreement, Indenture, and Portfolio Management Agreement set forth clearly the Noteholders' right to demand redemption and the steps that must follow such demand. See, e.g., Stern Aff., Ex. B §8.1; Ex. E, §9.1(e); Ex. F §§ 1(b), 8; see also supra at 4-7. Plaintiff admits as much. See Compl. ¶ 23. Because plaintiff is unable to allege that Defendants failed to comply with any provision of these agreements, its breach of contract claim fails.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

### A.    A Fiduciary Relationship Did Not Exist Between Plaintiff And DeAM

In order to state a claim for breach of fiduciary duty, a plaintiff must plead that (1) a fiduciary duty was breached; (2) defendant knowingly aided the breach; and (3) damages resulted from the breach. Henneberry, 2005 WL 991772, at *13. Moreover, "as a predicate

consideration, finding a breach of fiduciary duty requires finding that a fiduciary relationship existed between the parties." Id.

As set forth in detail above, plaintiff fails to allege, because it cannot, that any fiduciary duty was owed by defendants to the Certificateholders or Noteholders. See, e.g., Compl. ¶ 31 ("As a fiduciary, the Portfolio Manager is held to a prudent man standard in performing services *to the Trust*.") (emphasis added). By plaintiff's own allegation, any fiduciary duty that DeAM, as portfolio manager, owed was to the Trust itself, and not individual Certificateholders or Noteholders. See, e.g., FS Parellel Fund, 2004 WL 3048751, at *3 (holding "claims that arise from classic fiduciary principles of care and loyalty" belong to the corporation); In re Worldcom, at *12 (" breach of fiduciary duty generally runs to the corporation and not the shareholders"); see Rosenfeld v. Black, 336 F. Supp. 84, 92 (S.D.N.Y. 1972) ("it is the corporate entity and not the stockholders here who may claim damages for the breach of fiduciary duty"). Accordingly, plaintiff's claim should be dismissed because plaintiff has not alleged the existence of a fiduciary relationship between Debussy, as Certificateholder, and defendants.

### B.     The Breach of Fiduciary Duty Claim is Duplicative of the Breach of Contract Claim

It is well settled that "a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." William Kaufman Org. Ltd. v. Graham & James LLP, 269 A.D.2d 171, 173, 703 N.Y.S.2d 439, 442 (1st Dep't 2000) (dismissing breach of fiduciary duty claim on the grounds that it was duplicative of breach of contract claim). That is because a "[a] claim arising out of an alleged breach of contract . . . may not be converted into a tort action absent the violation of a legal duty independent of that created in the contract." Sergeants Benevolent Assoc. Annuity Fund v. Renck, 19 A.D.3d 107,

796 N.Y.S.2d 77, 80 (4th Dep't 2005); see also Gale v. Bershad, Civ. No. 15714, 1998 WL 118022, at \*5 (Del. Ch. March 4, 1998) ("[i]f the duty is contractual, that would preclude any fiduciary claim based upon the same alleged conduct"); see also HB Korenvaes Inv., L.P. v. Marriott Corp., Civ. No. 12922, 1993 WL 257422 (Del. Ch. June 9, 1993).

Debussy's breach of fiduciary claim arises out of the same facts as its breach of contract claim. See William Kaufman Org., 269 A.D.2d at 173, 703 N.Y.S.2d at 443. Indeed, Debussy explicitly states that DeAM's fiduciary breach arose from a "willful misfeasance, gross negligence and a reckless disregard of DeAM's obligations and duties *under the Portfolio Management Agreement*." Compl. ¶ 34 (emphasis added). Debussy also posits that the actions of DeAM as fiduciary were held to a "prudent man standard," Compl. ¶ 31, a standard borrowed from the express language of the Portfolio Management Agreement and which, according to Debussy, governs the breach of contract claim as well. See Compl. ¶ 42 (quoting the Portfolio Management Agreement, obligating the portfolio Manager "to 'use such care and skill as a prudent man would exercise or use under the circumstances'"). Because the breach of fiduciary duty claim is nothing more than a re-casting of the breach of contract claim as a tort claim, it should be dismissed.

**C.    The Breach of Fiduciary Duty Claim Is Precluded By The Express Terms Of The Contract**

Because the breach of fiduciary duty claim does not allege a duty independent of the contractual duty created by the Portfolio Management Agreement and is accordingly duplicative of plaintiff's breach of contract claim, it further suffers from the same defects as the breach of contract claim:  plaintiff fails to allege conduct by defendants that was in breach of any provisions of the Agreement.

19

It is well established that where a "dispute involves a right or obligation created by a contractual term in [a] governing instrument, fiduciary principles play no role because the dispute must be adjudicated under contract principles." Gale v. Bershad, 1998 WL 118022, at *5 (Del. Ch. March 4, 1998); see Simons v. Cogan, 542 A.2d 785, 786 (Del. 1987) ("Broad and abstract requirements of a 'fiduciary' character ordinarily can be expected to have little or no constructive role to play in the governance of such a negotiated, commercial relationship"). As set forth above, plaintiff does not allege that defendants failed to adhere to the Agreements' express provisions in carrying out the liquidation of the Trust portfolio. Indeed, Debussy concedes in the Complaint that DeAM's actions to dissolve the trust were taken "pursuant to the terms of the Indenture and the Trust Agreement." Compl. ¶ 23.

Moreover, Debussy specifically acknowledged the very same purported conflict of interest of which it now complains when it agreed to purchase the Trust Certificates. Specifically, plaintiff alleges that there was a "potential conflict between Deutsche Bank as a competitor in the market for secured bank debt underlying the Trust and Deutsche Bank as the Portfolio Manager of the Trust." Compl. ¶ 20. Section 5 of the Portfolio Management Agreement, however, provides, in relevant part,

> The Issuer, each Noteholder by acquisition of an interest in a Note, *and each Certificateholder* by acquisition of an interest in a Certificate, acknowledges that it has been apprised of the possible conflict of interest that may exist between the activities of the Portfolio Manager under this Agreement, *the ownership of Notes or Certificates by the Portfolio Manager or its Affiliates,* and the other business activities of the Portfolio Manager or its Affiliates, and specifically agree that the Portfolio Manager and its Affiliates may, among other things, undertake any of the foregoing activities.

Stern Aff., Ex. F at §5 (emphasis added). Indeed, that same provision expressly notes that "the Portfolio Manager may . . . direct the acquisition or sale of Reference Loans from or to sources

that may include itself and its Affiliates . . ." Id. Thus, the Portfolio Manager was expressly authorized to engage in the alleged conduct of which plaintiff complains. Such an allegation cannot form the basis for a claim of breach of fiduciary duty.

## IV.   DEUTSCHE BANK IS NOT A PROPER PARTY

Plaintiff has not alleged any misconduct on the part of Deutsche Bank, the parent company of DIMA, the portfolio manager. Nor is Deutsche Bank alleged to be a party or successor to any of the agreements that form the basis of plaintiff's claims. Since no basis has been alleged for liability on the part of Deutsche Bank, those claims should be dismissed.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998); accord De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996). Therefore, in order to state a claim against a parent corporation, a plaintiff must overcome the "presumption of separateness." See De Jesus, 87 F.3d at 70.

The Complaint makes no attempt to overcome the presumption of separateness. Notwithstanding plaintiff's sweeping definition of Deutsche Bank to include "Deutsche Bank AG and other Deutsche Bank entities" (Compl. ¶ 12), the Complaint fails to allege any specific conduct or lack thereof on the part of Deutsche Bank. Indeed, the Complaint alleges that this action seeks to recover damages suffered by plaintiff "resulting from the *portfolio manager's* (defined in the Complaint as DeAM) breach of fiduciary duty and breach of contract." Compl. ¶ 1; see also Compl. ¶ 3 ("As a result of DeAM's actions, the investors in the Trust . . . suffered significant damages . . . ."). In contrast, the Complaint does not include a single alleged act or omission by Deutsche Bank, nor does it allege a basis for disregarding the corporate separateness of Deutsche Bank and DeAM. Accordingly, the claims against Deutsche Bank must be dismissed.

21

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Complaint be

dismissed in its entirety and that the Court grant such other and further relief as the Court may

deem just and proper.

Dated: New York, New York
    August 24, 2005

                   Respectfully submitted,

                   SIDLEY AUSTIN BROWN & WOOD LLP

                   By:   s/ Andrew W. Stern
                        Andrew W. Stern (AS 7094)
                        Saima S. Ahmed (SA 9342)
                        787 Seventh Avenue
                        New York, NY 10019
                        (212) 839-5300

                        Attorneys for Defendants