UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X
                                             :
DEBUSSY LLC, on behalf of itself and all others   :  05 Civ. 5550 (SHS) (JCF)
similarly situated,                          :
                                             :  (Electronically Filed)
                Plaintiff,                   :
                                             :
        against                              :
                                             :
DEUTSCHE BANK AG and DEUTSCHE ASSET          :
MANAGEMENT,                                  :
                                             :
                Defendants.                  :
                                             :
------------------------------------------- X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

### SIDLEY AUSTIN BROWN & WOOD LLP

ATTORNEYS FOR   Defendants Deutsche Bank AG and
                Deutsche Asset Management

ANDREW W. STERN (AS 7094)
SAIMA S. AHMED (SA 9342)
787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii-iii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ........................................................................................................................... 3

I.      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ................................................. 3

       A.     Because Plaintiff's Claims are Derivative, Plaintiff Lacks Standing ................ 3

       B.     Plaintiff Has Not Stated A Claim For Breach of Fiduciary Duty ..................... 6

       C.     The Breach of Fiduciary Duty Claim is Precluded by the Breach of Contract Claim ............................................................................................... 7

       D.     Plaintiff's Breach of Contract Claim Should be Dismissed ............................. 8

       E.     Deutsche Bank is Not a Proper Party ................................................................ 9

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

Avnet, Inc. v. American Motorists Insurance Co.,
   115 F.R.D. 588 (S.D.N.Y. 1987) ..................................................................................10

Banco Espirito Santo de Investimento S.A. v. Citibank, N.A.,
   No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ...................9

In re Eaton Vance Mutual Funds Fee Litigation,
   380 F. Supp.2d 222 (S.D.N.Y. 2005)..............................................................................4

Stoner v. Walsh,
   772 F. Supp. 790 (S.D.N.Y. 1991) ...............................................................................10

Terrydale Liquidating Trust v. Barness,
   611 F. Supp. 1006 (S.D.N.Y. 1984)................................................................................4

In re Worldcom,
   323 B.R. 844 (Bankr. S.D.N.Y. 2005)............................................................................6

### STATE CASES

Bender Insurance Agency v. Treiber Insurance Agency, Inc.,
   283 A.D.2d 448, 729 N.Y.S.2d 142 (2nd Dep't 2001)....................................................7

Central Bank of Denver, N.A. v. Deloitte & Touche,
   928 P.2d 754 (Colo. Ct. App. 1996) ...............................................................................5

Confin International Investment v. AT&T Corp.,
   No. 19997, 2004 WL 485464 (Del. Ch. March 12, 2004).............................................4

Feldbaum v. McCrory Corp.,
   Civ. A. Nos. 11866, 11920, 11206, 1992 WL 119095 (Del. Ch. June 2, 1992)............5

Gordon v. Bialystocker Ctr. & Bikur Cholim, Inc.,
   45 N.Y.2d 692 (1978).....................................................................................................6

Nils Baltus-Michaelson v. Credit Suisse First Boston LLC,
   04 Civ. 0416, 2004 WL 2668259 (2nd Cir. Nov. 23, 2004)...........................................4

Rossdeutscher v. Viacom, Inc.,
   768 A.2d 8 (Del. 2001) ..................................................................................................6

Saminsky v. Abbott,
    185 A.2d 765 (Del. Ch. 1961)..................................................................................4

Solow v. Aspect Resources, Inc.,
    No. Civ. A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004)..............................7, 8

Tooley v. Donaldson, Lufkin & Jenrette, Inc.,
    845 A.2d 1031 (Del. 2004) .....................................................................................3

U.S. Bank National Associate v. U.S. Timberlands Klamath Falls, L.L.C.,
    864 A.2d 930 (Del. Ch. 2004)..................................................................................5

Wiener v. Lazard Freres & Co.,
    241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dep't 1998)......................................................6

Zimmer-Masiello, Inc. v. Zimmer, Inc.,
    159 A.D.2d 363, 552 N.Y.S.2d 935 (1st Dep't 1990)..................................................8

**PRELIMINARY STATEMENT**

Plaintiff's opposition memorandum confirms that this case is nothing more than an attempt by Debussy to rewrite the underlying economics of a deal to which it agreed more than seven years ago. Debussy is a sophisticated investor that chose in 1998 to participate in a sophisticated investment vehicle, the Riverside Loan Trust II (the "Trust"). As with most investments, the Trust provided an opportunity for reward, but, as with all investment vehicles of this type, also presented considerable risks. In particular, Debussy chose to invest in Riverside Loan Trust II as a Certificateholder with full and prior knowledge that:

- Debussy was the sole Certificateholder;

- Scudder Kemper Investments, Inc. ("Scudder") would serve as both the Portfolio Manager for the Trust and the manager of the two mutual funds that were the sole Noteholders investing in the Trust;

- Scudder's dual role as the Portfolio Manager for the Trust and the manager of these two mutual funds constituted a potential conflict of interest;

- At any time after a date four years after issuance of the securities, any Noteholder could demand redemption of all or any portion of the Notes that it held;

- The Noteholders were permitted to demand redemption for any reason whatsoever or for no reason at all; and

- If both Noteholders were to demand redemption, the terms of the agreements governing the Trust mandated that the Certificates held by Debussy would also be redeemed, and that the assets of the Trust would be liquidated and the Trust dissolved, regardless of current market conditions for the Trust's assets and regardless of the financial impact on the Certificateholder.

In other words, Debussy was aware when it invested in the Trust that it could end up in exactly the situation about which it now complains: being an involuntary participant in the wind-down of the Trust's affairs, precipitated by a demand for redemption by two Noteholders

1

that are affiliates of the Trust's portfolio advisor.[1] Thus, plaintiff's insinuation of some great conspiracy arising out of Deutsche Bank's acquisition of Scudder is merely an attempted diversion from plaintiff's real agenda: to recoup an investment that ultimately turned out less favorable than it had hoped.

As explained in defendants' moving papers, the events and transactions forming the basis for plaintiff's claims occurred precisely as set forth in the Trust's governing documents and were contemplated by the parties from the outset. Although plaintiff contends that it should be able to bring claims for breach of contract and breach of fiduciary duty because the Trust Agreement "does not address the unique situation presented by this case where the Portfolio Manager is the alleged wrongdoer **and** controls the Noteholders, likely because at the time the Trust Agreement was drafted, the interests of Scudder as the Portfolio Manager were completely aligned with the interests of the Trust" (Plaintiff's Opposition Memorandum of Law ("Opp. Mem.") at 10), the truth is that nothing changed except the name of the advisory entity: Deutsche Investment Management Americas Inc. ("DIMA") became the legal name of Scudder, but the same entity continued as Portfolio Manager for the Trust and manager of the two mutual fund Noteholders.

Even accepting plaintiff's allegations as true, it cannot overcome the legal impediments to its stating a claim, and plaintiff's opposition to the motion to dismiss fails to alter this conclusion. As discussed further below:

- Notwithstanding plaintiff's attempts to obscure the issues before this Court with an irrelevant diatribe regarding "no-action clauses," plaintiff cannot assert the claims in this action as direct claims on behalf of the Trust's investors because they are derivative claims belonging to the Trust.

---

[1] Contrary to plaintiff's repeated mischaracterization, the mutual funds that held the Notes were not "owned by" defendants: they were owned by their shareholders, advised by DIMA, and governed by a board of directors.

2

- Even if plaintiff's claim for breach of fiduciary duty were properly alleged directly rather than derivatively, it would fail because any fiduciary duty that the Portfolio Manager owed was to the Trust, not the investors directly.

- Because the purported fiduciary duty that plaintiff alleges was breached is based entirely on the contract between the Portfolio Manager and the Trust, the breach of fiduciary duty claim is precluded by the breach of contract claim.

- Even if plaintiff's breach of contract claim could be brought directly, the claim should be dismissed for lack of standing since plaintiff is neither a party to nor a beneficiary of the Agreement. Moreover, even if plaintiff could somehow establish standing and assert a claim for breach of contract, its claim would further fail because, setting aside its conclusory and unsupported allegations, plaintiff is unable to allege how defendants' conduct in following the steps required under the agreements breached any provisions of the Portfolio Management Agreement.

- Finally, in addition to all of the above reasons requiring dismissal against both defendants, plaintiff's claims against Deutsche Bank, the ultimate parent company of the portfolio manager, should be dismissed because plaintiff has not alleged any conduct on the part of Deutsche Bank and, by plaintiff's own admissions, it is unable to do so without discovery.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED

#### A. Because Plaintiff's Claims are Derivative, Plaintiff Lacks Standing

As defendants demonstrated in their moving papers, the claims that plaintiff seeks to assert are derivative claims and plaintiff therefore lacks standing to pursue them. Under controlling Delaware law, in order to determine whether a claim alleged by a shareholder is one that can be brought by the shareholder directly or must be brought derivatively, a court must look to (1) who suffered the alleged harm (the corporation or the stockholder individually), and (2) who would receive the benefit of the recovery or other remedy (the corporation or the stockholder individually). See Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004). Applying these principles, courts have held that a breach of fiduciary duty "owed to a corporation must be addressed through a derivative claim rather than a direct claim

3

because the harm to the investor flows through the corporation and thus the injury to the investor is only indirect." In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp.2d 222, 235 (S.D.N.Y. 2005) (quotation omitted); Confin Int'l Inv. v. AT&T Corp., No. 19997, 2004 WL 485464, at *2 (Del. Ch. March 12, 2004).

While plaintiff acknowledges that the Tooley test is the governing analysis regarding the distinction between direct and derivative claims, see Opp. Mem. at 14, plaintiff argues, without citing to any supporting authority, that the harm here "obviously is to the individual investors whose distributions were negatively affected by the wrongdoing alleged and the benefit of any recovery would obviously flow to the individual investors in the form of an increased distribution." Id. Yet, as defendants demonstrated in their moving papers, complaints regarding a loss in the value of an investment are classic derivative claims. See Defendants' Memorandum of Law in Support of Motion to Dismiss ("Mov. Mem.") at 11; Nils Baltus-Michaelson v. Credit Suisse First Boston LLC, 04 Civ. 0416, 2004 WL 2668259, at *1 (2nd Cir. Nov. 23, 2004) ("a loss of investment value affects all shareholders equally and may only be raised in a derivative suit").

Moreover, contrary to plaintiff's assertion that these well-established principles regarding investor claims do not apply because the Certificateholders are investors in a trust rather than a corporation, because Debussy's relationship is analogous to that of a shareholder in a corporation, principles governing corporations, including the distinctions between direct and derivative claims, control. See Mov. Mem., at FN 9, 9-13; Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006, 1016 (S.D.N.Y. 1984) (applying principles governing corporations, including business judgment rule, to business trust); Saminsky v. Abbott, 185 A.2d 765, 771 (Del. Ch. 1961) (explaining that "a common law business trust partakes of most of the attributes

4

of an ordinary business corporation" and applying law with respect to business corporations to trust).

Plaintiff neglects to address the controlling authority cited by defendants and instead cites to a vacated decision (U.S. Bank Nat'l Assoc. v. U.S. Timberlands Klamath Falls, L.L.C., 864 A.2d 930, 939-40 (Del. Ch. 2004), vacated, U.S. Timberlands Klamath Falls v. U.S. Nat'l Assoc., 875 A.2d 632 (Del. 2005)), and a non-binding decision from the Colorado Court of Appeals (Central Bank of Denver, N.A. v. Deloitte & Touche, 928 P.2d 754, 755 (Colo. Ct. App. 1996)), in which the plaintiff's claims were in fact dismissed. Plaintiff then argues that, because the Trust Agreement sets forth the applicable rights of the trustee, basic corporate principles do not apply. Of course, defendants do not dispute that the Trust documents set forth the rights and obligations of the parties. Indeed, as defendants demonstrated in their moving papers, the Portfolio Management Agreement, along with the Indenture and Trust Agreement, set forth in detail the Noteholders' right to demand redemption and the steps to be taken in the event of such demand, including the subsequent liquidation of the Trust's holdings.

What defendants do dispute, however, are plaintiff's attempts to twist the simple proposition that the Trust documents govern the claims here into the unsupported proposition that the absence of a no-action clause in the Trust Agreement somehow bestows upon plaintiff the right to bring an action for breach of fiduciary duty regardless of the fact that plaintiff's claims are in fact derivative claims. See Opp. Br. at 11-14. Since no "no-action" clause is at issue here, plaintiff's red herring should be ignored.[2]

---

[2] Moreover, neither of the two cases that plaintiff cites in favor of its argument that no-action clauses cannot operate to preclude investors of standing to sue where the underlying securities have been redeemed support this argument. Notably, in Feldbaum v. McCrory Corp., Civ. A. Nos. 11866, 11920, 11206, 1992 WL 119095, at *8 (Del. Ch. June 2, 1992), the Court held that "given the derivative characters of these claims, it is clear that they can be prosecuted by the trustees representing the bondholders as a group" and because the claims were subject to a no-action clause, plaintiffs' claims were

5

### B.     Plaintiff Has Not Stated A Claim For Breach of Fiduciary Duty

Even assuming plaintiff can somehow directly assert claims belonging to the Trust, as set forth in defendants' moving papers, under governing Delaware law, and by plaintiff's own allegations, any fiduciary duty that DIMA, as portfolio manager, owed was to the Trust itself rather than individual Certificateholders or Noteholders. See In re Worldcom, 323 B.R. 844, 850 (Bankr. S.D.N.Y. 2005) ("breach of fiduciary duty generally runs to the corporation and not the shareholders"). Debussy, however, ignores the governing case law cited by defendants and instead cites to inapposite cases that recite general standards of fiduciary duty and are limited to the facts and circumstances of those cases. Gordon v. Bialystocker Ctr. & Bikur Cholim, Inc., for example, cited by plaintiff, involved the fiduciary duty owed by a nursing home to an elderly resident taken under the nursing home's care and control. See 45 N.Y.2d 692, 698 (1978); Opp. Mem. at 15; see also Wiener v. Lazard Freres & Co., 241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dep't 1998) (fiduciary duty owed by investment bank to purchaser plaintiffs from whom they accepted an application fee but then secured a deal using confidential information obtained by plaintiffs with another purchaser).

Moreover, as discussed in detail in the moving memorandum and amplified further at Point D, infra, where the parties performed fully in accordance with the governing documents, no claim for breach of fiduciary duty has been stated. Plaintiff's attempt to

---

dismissed. Furthermore, Rossdeutscher v. Viacom, Inc., 768 A.2d 8 (Del. 2001), also cited by plaintiff, see Opp. Mem. at 13, is entirely distinguishable. Shareholders there commenced a suit against the issuer for breach of contract and unjust enrichment arising from the issuer's alleged falsification of economic data in an attempt to inflate the stock prices and reduce payments due to the shareholders under contractually created derivative securities (CVR's). Id. at 11. Defendant argued that plaintiffs were barred from bringing the claims because of a no-action clause, which provided that shareholders could not sue unless they provided written notice to the Trustee and the Trustee refused to sue despite having received a demand from at least 25% of the holders. Id. at 22. Unlike the present case, the plaintiffs there were actually parties to the agreement under which they sued for breach of contract and unjust enrichment. Id. at 11. Moreover, because the plaintiffs were parties to the CVR Agreement, the mere existence of the no-action clause was a recognition that there were certain circumstances under which shareholders themselves could bring claims for alleged claims arising from the CVR Agreement.

manufacture a breach by pointing to the alleged motivation behind the Noteholders' redemption demand is specious. The right to make that demand was expressly granted in the agreements executed in 1998, and the claims based thereon are barred entirely by those agreements.

### C. The Breach of Fiduciary Duty Claim is Precluded by the Breach of Contract Claim

Because plaintiff cannot allege the existence of a fiduciary duty to plaintiff separate and apart from the duties owed to the Trust arising from the contractual relationship between DIMA and the Trust, the breach of fiduciary duty claim fails for the additional reason that it is duplicative of the breach of contract claim. See, e.g., Solow v. Aspect Resources, Inc., No. Civ. A. 20397, 2004 WL 2694916, at *4 (Del. Ch. Oct. 19, 2004) ("Because of the primacy of contract law over fiduciary law, if the duty sought to be enforced arises from the parties' contractual relationship, a contractual claim will preclude a fiduciary claim"); Def. Mem. at 18-19. In response, plaintiff states the uncontroversial proposition that allegations underlying a breach of fiduciary duty claim may overlap with allegations forming the basis for a breach of contract claim. See Opp. Mem. at 20. Debussy, however, has omitted an element critical to maintaining a breach of fiduciary duty claim concurrent with a breach of contract claim: the existence of an independent fiduciary duty.

Not surprisingly, the cases cited by Debussy in which a breach of fiduciary duty claim is allowed all involved situations where it was indisputable that there was a fiduciary duty owed by the defendant to the plaintiff separate and apart from any such duty created by the governing contract. See, e.g., Bender Ins. Agency v. Treiber Ins. Agency, Inc., 283 A.D.2d 448, 450, 729 N.Y.S.2d 162 (2nd Dep't 2001) ("Because *not all duties owed [plaintiff] by [defendant] arose from the parties' Agreement*, [plaintiff's] claim that [defendant] usurped corporate assets and opportunities and breached his duty of loyalty, are not merely duplicative of its breach of

7

contract"); Zimmer-Masiello, Inc. v. Zimmer, Inc., 159 A.D.2d 363, 365, 552 N.Y.S.2d 935, 937 (1st Dep't 1990) (finding confidential relationship existed between defendant manufacturer and plaintiff exclusive sales distributor on the basis of dominance of manufacturer over sales distributor and dismissing breach of contract claim). Where, as here, the purported fiduciary duty is created by a contractual arrangement and nothing more, the claim for breach of fiduciary duty must be dismissed. See Mov. Mem. at 18-19; Solow, 2004 WL 2694916, at *4, FN 29 ("Article 3.1 of the partnership agreement, which according to the Amended Complaint, "expressly imposes upon [defendant] a fiduciary duty and obligation to use its reasonable business judgment to conduct the affairs of the Partnership" does not [save the breach of fiduciary duty claim] because the alleged reinvestment is not inherently a breach of fiduciary duties, nor are the other allegations . . . .").

### D.   Plaintiff's Breach of Contract Claim Should be Dismissed

As set forth in defendants' moving papers, it is axiomatic that one must either be a party to, or a third party beneficiary of, a contract in order to sue for breach of that contract. See Mov. Mem. at 13-14. Debussy does not dispute that it was not a party to the Portfolio Management Agreement, the contract that it claims was breached. Nor does Debussy anywhere in its opposition papers refute defendants' arguments that it was not a third party beneficiary of that contract. Perhaps this is because such an argument would be entirely meritless given, among other things, the express inclusion of 1) a party *other than* Debussy as a third party beneficiary; and 2) a non-assignment clause along with an inurement clause that expressly identifies to whose benefit the agreement inures (not Debussy). See id. at 14-15. Instead, plaintiff asserts, in a wildly conclusory manner, that it must be allowed to assert the breach of contract claim because it purportedly is the only entity that "can." For this proposition, plaintiff cites and mischaracterizes Banco Espirito Santo de Investimento S.A. v. Citibank, N.A., No. 03

Civ. 1537 (MBM), 2003 WL 23018888, at *14 (S.D.N.Y. Dec. 22, 2003), a decision in which the breach of contract claim was in fact *dismissed* precisely because plaintiff was not an intended third party beneficiary of the contract, and despite plaintiff's argument that the party to the contract -- the investment funds -- had not asserted the claim because defendant Citibank was its affiliate. Banco Espirito supports dismissal here as well.

Moreover, in response to defendants' argument that plaintiff has made an insufficient allegation of a breach -- a purported failure to "use such care and skill as a prudent man would exercise or use" in discharging its duties under the contract -- plaintiff points only to the same conclusory allegation. See Opp. Mem. at 19. Plaintiff does not even attempt to refute the showing made in defendants' moving papers that, even taking plaintiff's allegations as true, no breach of contract occurred. Indeed, neither in the Complaint nor in its opposition papers does plaintiff provide any basis for the Court to conclude that DIMA breached the agreement when all of its actions complied with the express provisions thereof. The claim for breach of contract should, therefore, be dismissed.

### E. **Deutsche Bank is Not a Proper Party**

Finally, plaintiff argues that its claims against Deutsche Bank, the ultimate parent company of DIMA, the portfolio manager, should be sustained despite plaintiff's utter failure to allege *any* conduct -- let alone misconduct -- on the part of Deutsche Bank.[3] Tellingly, plaintiff concedes that "without discovery, plaintiff cannot plead with greater specificity the exact role of Deutsche Bank, the parent company, in the alleged wrongs or even the working relationship between Deutsche Bank, Deutsche Asset Management and DIMA . . . ." Opp. Mem. at 21.

---

[3] Plaintiff's loose references to "Deutsche Bank" or "Deutsche Asset Management" as the portfolio manager cannot substitute for a well-pleaded allegation.

9

It is well established, however, that because "the discovery rules are not a hunting license to conjure up a claim that does not exist," "it is impermissible for a party to first file a complaint and later conduct discovery to determine whether a cause of action exists." <u>Avnet, Inc. v. American Motorists Ins. Co.</u>, 115 F.R.D. 588, 592 (S.D.N.Y. 1987) (staying discovery pending the filing of an amended complaint); <u>see</u> <u>Stoner v. Walsh</u>, 772 F. Supp. 790, 806 (S.D.N.Y. 1991) ("The purpose of discovery [is] to explore factual allegations underlying a claim, not to try to 'conjure up a claim that does not exist'") (citation omitted). By its own admissions, this is precisely what plaintiff seeks to do. Given plaintiff's conceded inability to allege a basis for liability on the part of Deutsche Bank, the claims against Deutsche Bank should be dismissed in their entirety.

## **CONCLUSION**

For the foregoing reasons, and those set forth in defendants' moving memorandum, defendants respectfully request that the Complaint be dismissed in its entirety and that the Court grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
November 22, 2005

                    Respectfully submitted,

                    SIDLEY AUSTIN BROWN & WOOD LLP

                    By:   s/ Andrew W. Stern
                        Andrew W. Stern (AS 7094)
                        Saima S. Ahmed (SA 9342)
                        787 Seventh Avenue
                        New York, NY 10019
                        (212) 839-5300

                    Attorneys for Defendants